Docket No. 84684–Agenda 25–September 1998.

EMPLOYERS INSURANCE OF WAUSAU, Appellee, v. EHLCO LIQUIDATING TRUST 
et al
., Appellants (C.E. Heath 

 Compensation and Liability Insurance Company, Appellee).

Opinion filed January 22, 1999.

JUSTICE BILANDIC delivered the opinion of the court:

This appeal involves a dispute over insurance coverage for environmental property damage at industrial sites in Mena, Arkansas, and Albany County, Wyoming. Employers Insurance of Wausau (Wausau) filed this declaratory judgment action in the circuit court of Cook County against Ehlco Liquidating Trust; its trustee, Noel H. Goodman; and C.E. Heath Compensation and Liability Insurance Company (Heath).

Wausau is an insurance company that issued insurance policies to Edward Hines Lumber Company (Hines) and a subsidiary owned by Hines. Hines and its subsidiary operated lumber treatment facilities at the sites in Arkansas and Wyoming. Hines subsequently dissolved. Ehlco Liquidating Trust (Ehlco) is a trust created to resolve Hines’ contingent liabilities. Heath was an excess insurer of Hines.

The circuit court ultimately granted Ehlco’s motions for judgment on the pleadings with respect to insurance coverage for both sites. The appellate court reversed both judgments on the pleadings and remanded for further proceedings in accordance with its decision. 292 Ill. App. 3d 1036. We allowed the petition for leave to appeal filed by Ehlco and its trustee. 166 Ill. 2d R. 315.

BACKGROUND

The pleadings disclose the following undisputed facts pertinent to the issues in this appeal. Two underlying lawsuits are involved, one in Arkansas and one in Wyoming. Each underlying suit resulted from the operation of industrial wood-treatment facilities that dispersed hazardous wastes into the environment, thereby causing environmental contamination and property damage.

From January 1, 1968, to October 1, 1971, Wausau insured Hines and its subsidiary pursuant to certain comprehensive general liability insurance policies. These policies provided that Wausau “will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of *** property damage *** to which this insurance applies, caused by an occurrence, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such *** property damage.” Wausau discontinued insuring Hines in 1971.

Mena Site

The Mena site consists of 57 acres of land on which the Nebraska Bridge Supply and Lumber Company (Nebraska Bridge) constructed a post and pole production plant and, later, a wood-

treatment facility. In 1967, Hines acquired all the stock of Nebraska Bridge, making Nebraska Bridge a wholly owned subsidiary of Hines. From 1967 to 1978, Nebraska Bridge, as a Hines subsidiary, continued to operate the wood-treatment facility on the Mena site. Hines sold the Mena site in 1978.

In 1980, the United States Congress enacted the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA) (42 U.S.C. §9601 
et seq.
). On March 18, 1982, the United States Environmental Protection Agency (EPA) wrote a letter to Hines pursuant to CERCLA. The letter advised Hines that it may be a potentially responsible party (PRP), liable for the costs of investigating and responding to environmental contamination at the Mena site. Earlier, the EPA had verbally informed Hines that it intended to initiate an administrative action against Hines relating to the Mena site. As a result, also on March 18, 1982, but apparently before Hines received the PRP letter, Hines notified Wausau of the EPA’s intentions. Hines’ letter to Wausau stated:

“[A]lthough we have received no formal notice, we have been informed by the [EPA] and the Arkansas Department of Pollution Control and Ecology of their intentions to assert liability against us and others for costs related to the cessation and clean-up of alleged hazardous waste discharges from the Mena, Arkansas treating plant. We therefore hereby give you notice of such claims.”

On March 29, 1982, Wausau responded to Hines’ letter. Wausau indicated that its policies did not appear to provide coverage for the potential claim, stating:

“Regarding the allegation of property damage, there is no coverage for property damage occurring after our coverage expired, or after October 1, 1971. Also applicable to the last policy we had which expired October 1, 1971 we had endorsement number nineteen which was the exclusion for contamination or pollution unless it was sudden and accidental.”

On August 2, 1982, and again on March 8, 1983, Hines wrote to Wausau requesting that it reconsider its refusal to defend Hines against the EPA’s investigation and proceeding concerning the Mena site. Wausau provided no defense.

Meanwhile, the EPA commenced a lengthy environmental investigation of the Mena site, which concluded in late 1986. The EPA then issued its record of decision, which set forth its findings of fact and its final decision concerning remediation of environmental contamination at the Mena site.

On March 17, 1988, pursuant to CERCLA, the EPA filed a suit against Hines and another company in the United States District Court for the Western District of Arkansas. 
United States v. Edward Hines Lumber Co. & Mid-South Wood Products of Mena, Inc.
, No. 88–2049 (W.D. Ark. Ft. Smith Div.). The complaint alleged that the Mena site was contaminated with several known and suspected carcinogens, including arsenic; that the pollutants were migrating from the site; and that the releases and threatened releases may present an “imminent and substantial” endangerment to human health or the environment. The complaint sought an injunction requiring the defendants to implement remedial action and reimburse the EPA for sums expended, and declaring the defendants liable for all future costs incurred for environmental investigations, clean-up, and response and enforcement actions. The pleadings are silent as to whether Wausau had notice of the filing of this complaint.

Hines, the EPA, and the other company executed a consent decree concerning the Mena site. Therein, Hines agreed to finance and perform certain environmental response actions. Hines also agreed to reimburse the EPA for certain funds expended. The federal district court signed and entered this consent decree on May 16, 1988.

Wyoming Site

In the 1930s, Nebraska Bridge operated a wood-treatment facility in Albany County, Wyoming, on property owned by Union Pacific Railroad Company (Union Pacific). In 1934, Nebraska Bridge agreed to indemnify Union Pacific for property damage caused by its operations. As noted, Hines acquired Nebraska Bridge in 1967. From 1967 until 1972, Hines continued to operate the facility at the Wyoming site under the Nebraska Bridge name.

In 1981, the State of Wyoming filed suit against Union Pacific for damages caused by environmental contamination at the Wyoming site. In December of 1991, Union Pacific sued Ehlco, as the liquidating trust of Hines, under the 1934 indemnification agreement it had with Nebraska Bridge, in the federal district court of Wyoming. 
Union Pacific R.R. Co. v. J.H. Baxter & Co.
; 
Ehlco Liquidating Trust
, No. 91–CV–0247–B (D. Wyo.). Ehlco sent notice of this suit to Wausau in January 1992 and requested a prompt response regarding defense.

Wausau acknowledged receipt of Ehlco’s letter on February 27, 1992, and stated that it was searching for its policies. Ehlco continued to supply information and update Wausau on the status of the underlying suit and continued to assert that Wausau owed Ehlco a defense and coverage. Wausau apparently did nothing other than request information from Ehlco. In June of 1992, Ehlco informed Wausau of a $1.3 million settlement offer by Union Pacific. In response, Wausau offered to pay 9% of the settlement and 9% of the defense costs incurred.  Ehlco rejected Wausau’s offer. Ehlco settled the lawsuit for $1.3 million and, as a result, the district court dismissed the suit with prejudice on November 5, 1992.

Circuit and Appellate Court Proceedings

On February 26, 1993, after both underlying suits were concluded, Wausau filed a complaint in the circuit court of Cook County seeking a declaratory judgment that it owed no duty to defend or indemnify Ehlco for environmental property damage at the Wyoming site. Ehlco answered and moved for judgment on the pleadings, seeking a declaration that Wausau owed defense and indemnity coverage for the Wyoming site.

Ehlco also filed a counterclaim against Wausau seeking a declaration that Wausau owed defense and indemnity coverage for the environmental damage at the Mena site. Wausau then amended its complaint and sought a declaration of its obligations concerning the Mena site, in addition to the Wyoming site. Wausau also moved to dismiss Ehlco’s counterclaim as barred, asserting that Ehlco breached a notice condition in the insurance policies. Ehlco later moved for judgment on the pleadings with regard to the Mena site.

On November 7, 1994, the circuit court entered an order denying Wausau’s motion to dismiss Ehlco’s counterclaim regarding the Mena site. The circuit court found that Wausau was estopped from asserting Hines’ purported late notice as a defense to Ehlco’s claim. For ease of discussion, Hines is referred to as Ehlco from this point forward.

Also on November 7, the circuit court granted both of Ehlco’s motions for judgment on the pleadings. The circuit court held, as to each underlying matter, that Wausau owed a duty to defend Ehlco; that Wausau’s duty to defend had been triggered; that Wausau wrongly breached its duty to defend, by (1) failing to defend Ehlco and by (2) failing to file a timely declaratory judgment action; and that, as a result, Wausau was estopped from asserting its defenses to coverage. Based on the foregoing holdings, the circuit court declared that, with regard to the Mena site, Wausau was liable for clean-up and defense costs, as well as prejudgment interest. As to the Wyoming site, Wausau was liable for defense costs, the cost of the Union Pacific settlement, and prejudgment interest. With regard to both sites, the circuit court found that Wausau’s conduct was unreasonable and vexatious, and ordered Wausau to pay all attorney fees and costs in the declaratory judgment action, pursuant to section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 1994)).

On December 22, 1994, Ehlco filed in the circuit court, pursuant to statute (735 ILCS 5/2–701(c) (West 1994)), a petition entitled “Petition for Relief Pursuant to Declaratory Judgment.” The petition sought an order from the circuit court awarding money damages in accordance with the declaratory relief already awarded in the judgments on the pleadings. The petition sought in excess of $10 million from Wausau. For the Mena site, Ehlco sought recovery of $8,443,659.93 in clean-up costs and $369,783.90 in defense costs. For the Wyoming site, Ehlco sought recovery of $750,000 in damages paid pursuant to that settlement and $415,051.93 in defense costs. In addition, the petition sought certain amounts for prejudgment interest and declaratory suit fees.

Wausau filed two motions for reconsideration, which the circuit court denied in orders dated December 23, 1994, and March 21, 1995. Also, in the latter order, the circuit court entered judgment for Heath, concluding that the case against Heath was moot. Finally, the circuit court entered a finding of no just reason to delay enforcement or appeal pursuant to Supreme Court Rule 304(a) (155 Ill. 2d R. 304(a)).

On April 7, 1995, Wausau filed its notice of appeal in the appellate court. The notice stated that the appeal was being taken from the circuit court’s orders of February 28, 1994; November 7, 1994; December 23, 1994; and March 21, 1995.

On May 18, 1995, while Wausau’s appeal was pending in the appellate court, this court issued 
Lapham-Hickey Steel Corp. v. Protection Mutual Insurance Co.
, 166 Ill. 2d 520 (1995). 
Lapham-

Hickey
 held that a lawsuit must be filed in order to trigger an insurer’s duty to defend. 
Lapham-Hickey
, 166 Ill. 2d at 529-33.

The appellate court reversed some of the circuit court’s rulings and affirmed others. 292 Ill. App. 3d 1036. The appellate court agreed that Wausau was estopped from raising defenses to coverage, with one exception. This exception was that Wausau was not estopped from raising Ehlco’s alleged late notice in an  attempt to defeat coverage. According to the appellate court, timely notice is a condition precedent to coverage and, thus, it is not subject to estoppel.

With respect to the Mena site, the appellate court reversed the circuit court and held that Wausau owed no duty to defend Ehlco in the Arkansas lawsuit filed by the EPA. Relying on this court’s decision in 
Lapham-Hickey
, the appellate court held that the Arkansas suit did not constitute a “suit” within the meaning of the “any suit” language in the insurance policies. Rather, the appellate court found, this suit was “
pro forma
” in nature, “a mere formality,” and “but an extension or implementation of the administrative proceeding,” because the parties had executed, and contemporaneously filed with the federal complaint, the proposed consent decree.

In addressing the Wyoming site, the appellate court affirmed the circuit court’s ruling to the extent that the suit filed by Union Pacific triggered Wausau’s duty to defend. Nonetheless, the appellate court held that Wausau should not have been estopped from pursuing its claim that Ehlco provided late notice of this claim to Wausau, thereby negating coverage. According to the appellate court, no duty to defend could arise if Ehlco had breached this condition precedent to coverage. The appellate court therefore remanded the cause to the circuit court for further proceedings. The appellate court stated that, if Wausau’s late- notice defense was not successful on remand, then Wausau could still be subjected to an estoppel and a section 155 award as to the Wyoming site.

As a final matter, the appellate court concluded that Wausau waived its right to pursue alternative claims against Heath. The appellate court thus affirmed the judgment for Heath.

Ehlco and its trustee appeal. 166 Ill. 2d R. 315. Wausau requests cross-relief. 166 Ill. 2d R. 315(g); 155 Ill. 2d R. 318(a).

ANALYSIS

This is an action for declaratory relief (see 735 ILCS 5/2–701 (West 1992)) in which the circuit court granted Ehlco’s motions for judgment on the pleadings (see 735 ILCS 5/2–615(e) (West 1994)).“[A] motion for judgment on the pleadings is like a motion for summary judgment limited to the pleadings.” 3 R. Michael, Illinois Practice §27.2, at 494 (1989), citing 
Tompkins v. France
, 21 Ill. App. 2d 227 (1959); see 
Brown v. Zehnder
, 295 Ill. App. 3d 1031, 1033 (1998). Judgment on the pleadings is proper“[i]f the admissions in the pleadings disclose that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.” 3 R. Michael, Illinois Practice §27.2, at 494 (1989), citing
 Baker-Wendell, Inc. v. Edward M. Cohon & Associates, Ltd.
, 100 Ill. App. 3d 924, 927 (1981). For purposes of resolving the motion, the court must consider as admitted all well-pleaded facts set forth in the pleadings of the nonmoving party, and the fair inferences drawn therefrom. 
Baker-Wendell, Inc.
, 100 Ill. App. 3d at 927. The court must also examine the pleadings to determine whether an issue of material fact exists, and, if not, determine whether the controversy can be resolved solely as a matter of law. 
Baker-Wendell, Inc.
, 100 Ill. App. 3d at 927. Copies of written instruments attached to a pleading as an exhibit are considered a part of the pleading. 735 ILCS 5/2–606 (West 1994).

In granting Ehlco’s motions for judgment on the pleadings, the circuit court examined various pleadings including Wausau’s third amended complaint for declaratory judgment, Ehlco’s answer, and Ehlco’s counterclaim. Parenthetically, the record on appeal contains a fourth amended complaint by Wausau, which was filed long after Ehlco’s motions were granted and which the circuit court never considered. Curiously, both Ehlco and Wausau rely on allegations contained in this fourth amended complaint to support their respective arguments, and neither party challenges the propriety of doing so. We decline to participate in this procedural irregularity. Our analysis is confined to the pleadings that were before the circuit court when it ruled on the motions.

I. Duty to Defend as to the Mena Site

A. 
Was a Suit Filed?

Ehlco initially contends that the appellate court erred in holding that Wausau had no duty to defend Ehlco as to the Mena site because no true suit was filed against Ehlco concerning that site. According to Ehlco, the appellate court’s holding directly contradicts the plain language of the insurance policies at issue and this court’s opinion in 
Lapham-Hickey
. Ehlco maintains that Wausau’s duty to defend was triggered when the EPA filed its lawsuit against Ehlco in the federal district court in Arkansas.

Our decision in 
Lapham-Hickey 
is dispositive of this issue. In that case, the EPA began investigating possible environmental contamination at a Lapham-Hickey facility. The Minnesota Pollution Control Agency (MPCA) took over the investigation. During the investigation, the MPCA sent Lapham-Hickey a proposed consent order, which stated that Lapham-Hickey was a PRP and which required certain remedial actions. Lapham-Hickey declined to sign that consent order. Following negotiations, the MPCA issued Lapham-Hickey a “no-action” letter, and Lapham-

Hickey agreed to conduct a voluntary investigation of its facility. No suit was ever filed against Lapham-Hickey. Later, upon discovering contamination at its facility, Lapham-Hickey filed its own declaratory judgment action against its insurer seeking reimbursement of costs expended. The insurance policy at issue provided that the insurer would “defend any suit against the Insured” that alleged liability for certain damages. The question presented to this court was whether, although no “suit” was ever filed against Lapham-Hickey, the insurer’s duty to defend was triggered by the MPCA’s proposed consent order or its other actions. We held that because no suit was filed, the insurer’s duty to defend was never triggered. 
Lapham-Hickey
, 166 Ill. 2d at 529-

33. 
Lapham-Hickey
 established a bright-line test for determining when a “suit” exists in this context. “Suit” “refers to a proceeding in a court of law” and requires a complaint. 
Lapham-Hickey
, 166 Ill. 2d at 531-32. Neither a PRP letter, a draft consent order, nor a “no-action” letter constitutes a “suit.” 
Lapham-Hickey
, 166 Ill. 2d at 533.

In the present case, the comprehensive general liability insurance policies at issue imposed on Wausau the “duty to defend any suit against the insured.” The question to be resolved, therefore, is whether a “suit” was filed against Ehlco sufficient to trigger Wausau’s duty to defend. Under 
Lapham-Hickey
, it is clear that a “suit” was filed against Ehlco with respect to the Mena site. The EPA filed a suit against Ehlco in the federal district court in Arkansas, pursuant to CERCLA, on March 17, 1988. This suit was instituted by the filing of a complaint. The EPA’s action thus constitutes a “suit” because it was a proceeding in a court of law, and it was instituted with a complaint.

Nonetheless, Wausau urges us to adopt the appellate court’s reasoning that the Arkansas complaint was not a true suit because it was “a mere formality” and “but an extension or implementation of the administrative proceeding,” since the parties had executed and contemporaneously filed the proposed consent decree with the Arkansas complaint. Wausau claims that there cannot be a suit where one party’s liability in the suit is a foregone conclusion by reason of a previously executed consent decree. Wausau contends that the “any suit” language in its policies cannot be construed to encompass a complaint filed in a court of law, if that complaint is accompanied by a proposed consent decree. We reject this argument. 
Lapham-Hickey
 held that the word “suit” is unambiguous in this context and therefore gave the word its plain and ordinary meaning. 
Lapham-Hickey
, 166 Ill. 2d at 531-32. As discussed above, the Arkansas complaint meets 
Lapham-Hickey
’s definition of suit.

Even assuming, 
arguendo
, that Wausau’s interpretation of “any suit” is reasonable, at best it would create an ambiguity in the policy language. “A policy provision is ambiguous only if it is subject to more than one reasonable interpretation.” 
Lapham-

Hickey
, 166 Ill. 2d at 530. Wausau’s interpretation would then compete with the definition of suit, set forth above. Where competing reasonable interpretations of a policy exist, a court is not permitted to choose which interpretation it will follow. 
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 108-09 (1992). Rather, in such circumstances, the court must construe the policy in favor of the insured and against the insurer that drafted the policy. 
American States Insurance Co. v. Koloms
, 177 Ill. 2d 473, 479 (1997); 
Outboard Marine Corp.
, 154 Ill. 2d at 108-09. Since Wausau’s interpretation affords less coverage to Ehlco, we would be required to reject it. Wausau’s argument thus fails in any event.

Wausau also asserts that Ehlco waived its argument that the Arkansas complaint was a suit requiring a defense. According to Wausau, Ehlco waived this argument in the circuit court when it requested judgment on the pleadings based on the PRP letter.

The record does not support Wausau’s waiver argument. The record reveals that the circuit court was presented with argument on the issue of whether the Arkansas complaint was a suit within the meaning of the policies’ language. Ehlco presented a memorandum of law in support of its pleadings in which Ehlco maintained that Wausau’s duty to defend had been triggered. Wausau argued that no triggering event had occurred because there was no suit within the meaning of its policies. Ehlco responded: “Wausau’s claim that the underlying environmental matters were not suits *** is plainly wrong. Those matters involved actions filed in federal courts *** and a *** [PRP] letter from the [EPA].” In support of this assertion, Ehlco directed the circuit court to the copies of the complaints filed in both the Wyoming and Arkansas actions. Given that Ehlco argued to the circuit court that the Arkansas complaint was a suit requiring a defense, this claim was preserved. That Ehlco also argued in the circuit court that Wausau’s duty to defend was triggered by the PRP letter is of no consequence with regard to waiver. Therefore, Wausau’s waiver argument is without merit.

In accordance with the above holdings, we reverse the appellate court’s determination that Wausau owed no duty to defend with respect to the Mena site because no sufficient suit was filed. Wausau, however, asserts other arguments concerning its duty to defend Ehlco with respect to the Mena site. We address these arguments below.

B. 
Tender by Ehlco

Wausau claims that it owed no duty to defend the 1988 Arkansas complaint concerning the Mena site because Ehlco failed to tender its defense of that suit to Wausau. Relying on 
Institute of London Underwriters v. Hartford Fire Insurance Co.
, 234 Ill. App. 3d 70 (1992), Wausau insists that an insured must tender its defense to an insurer in order to trigger the insurer’s duty to defend. A tender pursuant to 
Institute of London Underwriters
 required the insured to notify the insurer that a suit, which potentially falls within the policy coverage, was filed and that the insured desires the insurer’s assistance in defending the suit. Wausau contends that Ehlco failed to tender its defense to Wausau and, as a result, Wausau’s duty to defend was never triggered.

This court recently rejected the tender requirement set forth in
 Institute of London Underwriters
. In 
Cincinnati Cos. v. West American Insurance Co.
, 183 Ill. 2d 317 (1998), we held that the lack of a tender by the insured does not relieve the insurer of its duty to defend if the insurer had “actual notice” of the underlying suit. “[A]ctual notice” means that the insurer knows both “that a cause of action has been filed and that the complaint falls within or potentially within the scope of the coverage of one of its policies.” 
Cincinnati Cos.
, 183 Ill. 2d at 329-30.

The pleadings here do not disclose whether Ehlco tendered its defense of the underlying Arkansas suit to Wausau. We therefore consider whether Wausau had actual notice of the suit. The pleadings, however, are also silent on the factual issue of whether Wausau had actual notice that the Arkansas suit had been filed. Because the pleadings fail to demonstrate that Wausau had actual notice of the Arkansas suit, which would trigger Wausau’s duty to defend that suit, we must affirm the appellate court’s reversal of the circuit court’s grant of Ehlco’s motion for judgment on the pleadings with regard to the Mena site. The pleadings before us do not entitle Ehlco to judgment as a matter of law.

We note, however, that in the circuit court Ehlco prevailed in its motion for judgment on the pleadings with regard to the Mena site because the court was persuaded that Wausau’s duty to defend had been triggered by events that 
preceded
 the filing of the 1988 Arkansas suit, particularly the EPA’s 1982 PRP letter. This result is not surprising given that, when the circuit court ruled upon the pleadings in 1994, notice of a PRP letter had been held sufficient to trigger the duty to defend. See 
United States Fidelity & Guaranty Co. v. Specialty Coatings Co.
, 180 Ill. App. 3d 378 (1989), 
overruled
, 
Lapham-Hickey
, 166 Ill. 2d 520. Consequently, there was no need in the circuit court for Ehlco to raise arguments pertaining to tender or actual notice of the Arkansas complaint, and the parties did not design their pleadings to address such issues. Under these circumstances, we hold that the parties should be given the opportunity to amend their pleadings to address the actual notice issue in the circuit court.

Despite this omission in the pleadings, Ehlco attempts to preserve its judgment on the pleadings as to the Mena site by pursuing another argument. In addressing Wausau’s tender contention, Ehlco asserts that, under the facts of this case, Wausau should be equitably estopped from requiring any further notice from Ehlco because Wausau had already flatly denied coverage to Ehlco on other grounds in 1982 and continuing through 1983. The pleadings show that Ehlco first advised Wausau of the EPA’s intention to assert CERCLA liability against it on March 18, 1982. Ehlco wrote that although it had “received no formal notice,” it had been informed by the EPA of its intentions to assert CERCLA liability against it with regard to the Mena site. The letter stated: “We therefore hereby give you notice of such claims.” On March 29, 1982, Wausau responded by letter that its policies did not appear to provide coverage for the potential claim. Wausau stated that there was no coverage for property damage occurring after the policies expired in 1971, and that one of the policies contained a pollution exclusion clause. Ehlco maintains that this March 29, 1982, letter from Wausau constituted a flat denial of coverage on grounds other than notice. The pleadings further disclose that, on August 2, 1982, and again on March 8, 1983, Ehlco wrote to Wausau and requested it to reconsider its refusal to defend Ehlco against the EPA’s investigation and proceeding concerning the Mena site. Wausau apparently did nothing in response. Ehlco asserts that Wausau’s repeated failures to retract its earlier denial of coverage left Ehlco with no doubt that Wausau would not treat the Mena site as covered. Ehlco insists that, given Wausau’s actions in 1982 and 1983, Ehlco was not required to give Wausau any further notice regarding the subsequent lawsuit, which was filed by the EPA on March 17, 1988. Rather, Ehlco’s position is that Wausau should be equitably estopped from asserting further notice requirements of Ehlco.

We decline Ehlco’s invitation to equitably estop Wausau based on the pleadings before us. As with the actual notice issue discussed above, the parties did not design their circuit court pleadings to address this theory of the case. Consequently, the parties should be given the opportunity to raise and rebut this argument in the circuit court in the first instance.

C. 
Summary as to the Mena Site

In summary, we hold that the 1988 Arkansas suit was a suit within the meaning of 
Lapham-Hickey
. We therefore reverse the appellate court’s determination that Wausau owed no duty to defend with respect to the Mena site because no sufficient suit was filed. We nonetheless affirm the appellate court’s reversal of the circuit court’s grant of Ehlco’s motion for judgment on the pleadings with regard to the Mena site, but for a different reason. Ehlco is not entitled to judgment on the pleadings as to the Mena site because the pleadings fail to demonstrate that Wausau’s duty to defend the Arkansas suit was properly triggered by actual notice of that suit. As explained above, the parties should be given the opportunity to amend their pleadings to address the actual notice and equitable estoppel issues in the circuit court.

Wausau argues that, if this court holds that Wausau had a duty to defend with respect to the Mena site, then we must remand this matter to the appellate court for consideration of issues which Wausau raised but the appellate court did not reach as to that site. Wausau offers no description of the issues that remain to be addressed by the appellate court. Rather, Wausau cites to a footnote in the appellate court decision, which states:

“In addition, on appeal Wausau contends that the trial court erred in entering judgment on the pleadings with respect to the Mena site without first permitting Wausau to file an answer to Ehlco’s Mena counterclaim; erred in denying Wausau’s motion to dismiss Ehlco’s Mena counterclaim on statute of limitations grounds; and erred in denying Wausau the opportunity to conduct discovery regarding its duty to defend in the underlying Mena proceedings. However, based upon our disposition of the coverage issue with respect to the underlying Mena proceedings ***, we need not address these contentions in our decision.” Slip op. at 15 n.4 (material unpublished under Supreme Court Rule 23 (166 Ill. 2d R. 23)).

These issues have not been raised or briefed in this court. Nonetheless, where errors were raised but not ruled upon in the appellate court, it is appropriate for this court to remand the cause to the appellate court for resolution of the issues that remain. 
People v. Lowery
, 178 Ill. 2d 462, 473 (1997); 
Suwalski v. Suwalski
, 40 Ill. 2d 492, 501 (1968). Therefore, pursuant to Wausau’s request, we remand this cause first to the appellate court for consideration of any issues that were raised, but which the appellate court did not reach as a result of its Mena rulings. On remand, the appellate court should be cognizant of the rulings in this opinion and proceed accordingly. The appellate court need resolve only those issues that it deems appropriate for resolution, in light of our holdings here. After resolving these issues, the appellate court should remand this cause to the circuit court for further proceedings consistent with this opinion, unless the appellate court’s resolution of the issues before it makes such further proceedings improper or unnecessary.

II. Duty to Indemnify as to the Mena Site

Ehlco next argues that the appellate court’s holding that no sufficient suit was filed as to the Mena site under 
Lapham-Hickey
 “may” negatively impact Ehlco’s ability to be indemnified by Wausau for the Mena clean-up costs. Ehlco thus urges us to hold that Wausau still owes an independent duty to indemnify Ehlco concerning that site. This issue need not be addressed. We have already held that the 1988 Arkansas action was a suit within the meaning of 
Lapham-Hickey
. Although we reversed Ehlco’s judgment on the pleadings as to the Mena site on another ground, further proceedings on remand may or may not result in a finding that Wausau breached its duty to defend the Arkansas suit. If, during further proceedings, the indemnification issue becomes relevant, Ehlco may raise and argue the issue at that point.

III. Estoppel as to Both Sites

Ehlco maintains that the appellate court erred in holding that the estoppel doctrine does not apply to Wausau’s late-notice defenses. Estoppel and late-notice defenses are at issue in this appeal with regard to both sites.

Briefly, under the estoppel doctrine, an insurer which breaches its duty to defend is estopped from raising policy defenses to coverage. Wausau contends, however, that the estoppel doctrine does not bar it from raising late-notice defenses. Additional background information is necessary for an understanding of Wausau’s late-notice defenses, and how the estoppel doctrine relates to those defenses.

A. 
Insurance Policy Provisions Relevant to

 Late-Notice Defenses

With minor variation, the notice provisions of the insurance policies provided in pertinent part as follows:

“In the event of an occurrence, written notice *** [thereof] *** shall be given by or for the insured to [Wausau] as soon as practicable ***.

* * *

If a claim is made or suit is brought against the insured, the insured shall immediately forward to [Wausau] every demand, notice, summons, or other process received by [the insured or its] representative.”

The policies also stated: “No action shall lie against [Wausau], unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy.”

B. 
Mena Site

As earlier set forth, we affirmed the appellate court’s reversal of Ehlco’s judgment on the pleadings with regard to the Mena site because the pleadings do not resolve whether Wausau’s duty to defend the 1988 Arkansas complaint was triggered. Wausau contends that, even if its duty to defend that complaint was triggered, insurance coverage would nevertheless be precluded for that site because Ehlco provided Wausau with late notice in violation of the policies’ provisions.

Wausau’s pleadings raise the defense of late notice of an occurrence with respect to the Mena site. Wausau alleges that Ehlco failed to comply with the policies’ notice provision requiring the insured to give Wausau notice of an “occurrence” as soon as practicable. Wausau does not dispute that Ehlco’s March 1982 letter to Wausau constituted notice. According to Wausau, however, Ehlco was aware of the environmental contamination at the Mena site at least as early as 1978, yet failed to provide Wausau with notice of it until March of 1982. Wausau maintains that Ehlco’s failure to provide timely notice of the occurrence to Wausau constituted a breach of the policies, thereby defeating coverage. Ehlco counters that the doctrine of estoppel bars Wausau from raising this defense.

The circuit court held that Wausau was estopped from raising this late-notice defense. The appellate court agreed that insurers which breach the duty to defend are generally estopped from raising policy defenses to coverage. The appellate court, however, recognized an exception to the general estoppel doctrine for late-

notice defenses.

C. 
Wyoming Site

Wausau additionally asserts that, notwithstanding its duty to defend the Wyoming suit, insurance coverage is precluded for the Wyoming site because Ehlco provided Wausau with late notice in violation of the policies’ provisions. Wausau raises two late-notice defenses with regard to the Wyoming site.

Wausau first asserts that Ehlco provided late notice to Wausau of an “occurrence” within the meaning of the policies’ language. Wausau’s pleadings claim that Ehlco breached the condition precedent in its policies “pertaining to Ehlco’s duties in the event of an occurrence ***, including those conditions requiring that Ehlco give proper and timely notice to Wausau.” In particular, Wausau asserts that, if an occurrence of property damage happened during the policy periods from 1967 through 1971, then Ehlco failed to provide notice of that occurrence to Wausau until 21 to 25 years later in 1992. Ehlco denies giving Wausau late notice of any occurrence of which it was aware. Ehlco admits that in early 1992 it promptly gave Wausau notice of the Wyoming suit filed against it by Union Pacific. Ehlco counters that Wausau is estopped from raising this late-notice defense.

Wausau also asserts that Ehlco provided it with late notice of the Wyoming suit, in violation of the policies’ provisions requiring suit papers to be timely forwarded to Wausau. It is undisputed that the Wyoming suit was filed against Ehlco in December of 1991, and that Ehlco provided notice of this suit to Wausau less than 60 days later, in January of 1992.

The circuit court held that Wausau was estopped from raising these late-notice defenses. The appellate court, applying its late-

notice exception to the estoppel doctrine, reversed and remanded the Wyoming site proceedings to the circuit court to give Wausau the opportunity to raise its defense of late notice of an occurrence.

The circuit court also found, as an aside, that Ehlco’s notice of the Wyoming suit to Wausau within 60 days was timely as a matter of law. The appellate court did not directly address this issue, but held that the record sufficiently established that Ehlco properly tendered its defense of the Wyoming suit to Wausau.

D. 
Analysis

The general rule of estoppel provides that an insurer which takes the position that a complaint potentially alleging coverage is not covered under a policy that includes a duty to defend may not simply refuse to defend the insured. Rather, the insurer has two options: (1) defend the suit under a reservation of rights or (2) seek a declaratory judgment that there is no coverage. If the insurer fails to take either of these steps and is later found to have wrongfully denied coverage, the insurer is estopped from raising policy defenses to coverage. 
Waste Management, Inc. v. International Surplus Lines Insurance Co.
, 144 Ill. 2d 178, 207-08 (1991); 
Clemmons v. Travelers Insurance Co.
, 88 Ill. 2d 469, 475 (1981); 
Murphy v. Urso
, 88 Ill. 2d 444, 451 (1981); 
Thornton v. Paul
, 74 Ill. 2d 132, 145, 159 (1978).

The estoppel doctrine has deep roots in Illinois jurisprudence. It arose out of the recognition that an insurer’s duty to defend under a liability insurance policy is so fundamental an obligation that a breach of that duty constitutes a repudiation of the contract. 
Kinnan v. Charles B. Hurst Co.
, 317 Ill. 251, 257 (1925). Although the doctrine also has roots in the principle of equitable estoppel, a review of the case law reveals that it has since developed into a distinct doctrine that stands on its own. See 
Clemmons
, 88 Ill. 2d 469; 
Murphy
, 88 Ill. 2d 444; 
Thornton
, 74 Ill. 2d 132; 
Kinnan
, 317 Ill. 251; 
Sims v. Illinois National Casualty Co.
, 43 Ill. App. 2d 184 (1963).

This estoppel doctrine applies only where an insurer has breached its duty to defend. Thus, a court inquires whether the insurer had a duty to defend and whether it breached that duty. See 
Clemmons
, 88 Ill. 2d at 475-78 (determining first that the insurer had a duty to defend, and then finding that the insurer had renounced that duty). Application of the estoppel doctrine is not appropriate if the insurer had no duty to defend, or if the insurer’s duty to defend was not properly triggered. These circumstances include where the insurer was given no opportunity to defend; where there was no insurance policy in existence; and where, when the policy and the complaint are compared, there clearly was no coverage or potential for coverage. See
 La Rotunda v. Royal Globe Insurance Co.
, 87 Ill. App. 3d 446, 452 (1980); 
McFadyen v. North River Insurance Co.
, 62 Ill. App. 2d 164, 171 (1965).

Once the insurer breaches its duty to defend, however, the estoppel doctrine has broad application and operates to bar the insurer from raising policy defenses to coverage, even those defenses that may have been successful had the insurer not breached its duty to defend. See 
Clemmons
, 88 Ill. 2d at 475-79. To date, this court has recognized a single exception to the estoppel doctrine. That exception is for serious conflicts of interest (
Thornton
, 74 Ill. 2d at 159), which we discuss later in this opinion. We are called upon here to decide whether the appellate court’s recognition of an exception to the estoppel doctrine for late-notice defenses is proper. As noted, there are two types of late-notice defenses at issue in this appeal, late notice of an occurrence and late notice of a suit.

The case law conflicts on the issue of whether to recognize an exception to the estoppel doctrine for late-notice defenses. The appellate court below followed cases that have recognized the exception. See 
Industrial Coatings Group, Inc. v. American Motorists Insurance Co.
, 276 Ill. App. 3d 799, 810-12 (1995) (involving late notice of an occurrence); 
M/A Com, Inc. v. Perricone
, 187 Ill. App. 3d 358 (1989) (involving late notice of an occurrence)
; Del Grosso v. Casualty Insurance Co.
, 170 Ill. App. 3d 1098 (1988) (involving late notice of a suit). Other cases have held that this exception does not exist. 
La Rotunda v. Royal Globe Insurance Co.
, 87 Ill. App. 3d 446, 452-53 (1980) (involving late notice of a suit); 
McFadyen v. North River Insurance Co.
, 62 Ill. App. 2d 164 (1965) (involving late notice of an accident); 
Maneikis v. St. Paul Insurance Co.
, 655 F.2d 818, 821-23 (7th Cir. 1981) (involving late notice of a suit); see 
Petersen Sand & Gravel, Inc. v. Maryland Casualty Co.
, 881 F. Supp. 309, 313-15 (N.D. Ill. 1995) (involving another defense, but following cases rejecting a late-notice exception).

The decisions recognizing an exception for late-notice defenses reason that an insured’s compliance with a notice provision in a liability insurance policy is a condition precedent to coverage. As a result, where the insured breaches the notice provision, that breach negates any duty to defend or indemnify on the insurer’s part. Furthermore, because the duty to defend has been negated, the general rule estopping the insurer from denying coverage where it breaches the duty to defend does not apply. In effect, this argument is that the insurer is free to disregard its duty to defend where the insured first breaches the contract of insurance by failing to provide timely notice. We are not persuaded by this argument. To accept it would be to contradict long established law governing the insurers’ duty to defend and the consequences of breaching that duty.

Illinois law is well established that where an underlying complaint alleges facts within or potentially within policy coverage, “the insurer is obliged to defend its insured even if the allegations are groundless, false, or fraudulent.” 
United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.
, 144 Ill. 2d 64, 73 (1991). The insurer may not refuse to defend “unless it is 
clear
 from the face of the underlying complaint[] that the allegations fail to state facts which bring the case within, or potentially within, the policy’s coverage.” (Emphasis in original.)
 Wilkin Insulation Co.
, 144 Ill. 2d at 73. The underlying complaint and the policy must be construed in favor of the insured, with all doubts resolved in the insured’s favor. 
Wilkin Insulation Co.
, 144 Ill. 2d at 74. Moreover, as noted above, where a complaint alleges facts potentially within the policy’s coverage, an insurer taking the position that a claim is not covered cannot simply refuse to defend the suit. Rather, the insurer must either defend the suit under a reservation of rights or seek a declaratory judgment that there is no coverage. If the insurer fails to take either of these actions, the estoppel doctrine applies.

Wausau contends that its late-notice defenses act to excuse its failure to take either of these actions. We disagree. The estoppel doctrine has long provided insurers in Wausau’s circumstances with the proper recourse. If an insurer believes that it received notice too late to trigger its obligations, it should defend its insured under a reservation of rights or litigate the matter in a declaratory judgment action.
 La Rotunda
, 87 Ill. App. 3d at 453; 
Maneikis
, 655 F.2d at 824. The insurer cannot simply abandon its insured. We therefore hold that there is no exception to the estoppel doctrine for late-notice defenses of the types asserted here. To hold otherwise would seriously undermine the effectiveness of the estoppel doctrine and its intended enforcement of the duty to defend. See generally S. Nardoni & J. Vishneski, “
The Illinois Estoppel Doctrine: Illinois Courts Make it Costly for Insurers to Breach Their Duty to Defend
,” 8 Envtl. Cl. J. 45 (Autumn 1995) (reviewing the history of the estoppel doctrine and arguing against the recognition of an exception for condition precedent defenses).

In reaching our holding, we reject Wausau’s contention that we must adopt the late-notice exception to estoppel to be consistent with our decision in 
State Security Insurance Co. v. Burgos
, 145 Ill. 2d 423 (1991). Although 
Burgos
 holds that notice of occurrence provisions in insurance liability policies are valid prerequisites to coverage, 
Burgos
 does not address the issue of whether an insurer may be estopped from asserting this policy condition as a bar to coverage. Consequently, 
Burgos
 is inapposite.

To the extent that the decisions recognizing an exception for late-notice defenses (
Industrial Coatings Group, Inc.
, 276 Ill. App. 3d 799;
 M/A Com, Inc.
, 187 Ill. App. 3d 358; 
Del Grosso
, 170 Ill. App. 3d 1098) conflict with our holding, they are hereby overruled.

Having declined to recognize a late-notice exception to the estoppel doctrine, we now turn to the case at hand. As to the Mena site, if it is ultimately determined during further proceedings that Wausau breached its duty to defend, then the estoppel doctrine will bar Wausau’s assertion of its late-notice defense.

With regard to the Wyoming site, we determine, 
infra
, that Wausau breached its duty to defend in the Wyoming action. Since Wausau breached its duty to defend, the estoppel doctrine applies. We therefore hold that the estoppel doctrine bars Wausau from asserting its late-notice defenses against Ehlco as to the Wyoming site. Accordingly, the appellate court erred when it remanded this cause to the circuit court for further proceedings in which Wausau would be allowed to assert its defense of late notice of an occurrence. We reverse this holding of the appellate court.

IV. Wausau’s Cross-Relief

Wausau requests cross-relief on several of the appellate court’s rulings. After reviewing Wausau’s arguments, we determine that Wausau is not entitled to cross-relief.

A. 
Tender by Ehlco of the Wyoming Suit

Wausau first contends that it had no duty to defend Ehlco with regard to the Wyoming suit because Ehlco never requested Wausau to assume Ehlco’s defense. Wausau appears to be asserting that Ehlco failed to properly tender its defense to Wausau. As earlier discussed, this court recently held that the lack of a tender by the insured does not relieve the insurer of its duty to defend if the insurer had “actual notice” of the underlying suit. 
Cincinnati Cos. v. West American Insurance Co.
, 183 Ill. 2d 317 (1998).

Wausau certainly had actual notice of the Wyoming suit. The admissions in the pleadings show that Union Pacific sued Ehlco in December of 1991, in the federal district court of Wyoming. Ehlco sent notice of this suit to Wausau in January 1992 and requested a prompt response regarding defense. Wausau acknowledged receipt of Ehlco’s letter, but replied only that it was searching for its policies. Ehlco continued to supply information and update Wausau on the status of the underlying suit and continued to assert that Wausau was liable. Wausau took no action on Ehlco’s behalf. The undisputed facts therefore establish that Ehlco requested Wausau to defend it in the Wyoming suit, and that Wausau had actual notice of that suit.

B. 
Conflict of Interest Exception as to the Wyoming Suit

Wausau next maintains that it should not be estopped from arguing policy defenses to coverage with regard to the Wyoming suit because a conflict of interest precluded it from assuming Ehlco’s defense.

A narrow exception to the estoppel doctrine exists where there is a serious conflict of interest that precludes the insurer from assuming the insured’s defense. 
Murphy
, 88 Ill. 2d at 451-58; 
Thornton
, 74 Ill. 2d at 152, 159. Even where a conflict exists, however, the insurer’s obligation to provide a defense should be satisfied by reimbursing the insured for the costs of the defense. 
Thornton
, 74 Ill. 2d at 152.

In this case, the appellate court held that, even in the unlikely event that a serious conflict existed between Wausau and Ehlco, the circuit court was nonetheless justified in estopping Wausau from raising policy defenses to coverage because of Wausau’s conduct in failing to reimburse Ehlco for the costs of its defense as incurred. The pleadings show that, despite Ehlco’s repeated requests for assistance, Wausau failed to provide Ehlco a defense by reimbursing it for costs as they were incurred. Wausau’s briefs do not challenge the appellate court’s holding in this regard, other than to make a factual allegation that Ehlco never forwarded its defense bills to Wausau. This factual allegation is not contained in the pleadings. Wausau had the opportunity to raise this factual allegation at the pleading stage, but failed to do so. Consequently, we affirm this holding by the appellate court.

C. 
Timeliness of Declaratory Judgment Action

as to the Wyoming Suit

Wausau also urges that estoppel cannot apply to the Wyoming suit because Wausau filed a timely declaratory judgment action. This assertion is without merit. Where an insurer waits to bring its declaratory judgment action until after the underlying action has been resolved by a judgment or a settlement, the insurer’s declaratory judgment action is untimely as a matter of law. See 
Clemmons
, 88 Ill. 2d at 479; 
Insurance Co. v. Markogiannakis
, 188 Ill. App. 3d 643, 651-52 (1989). Here, the pleadings reveal that Ehlco sent notice of the Wyoming suit to Wausau in January 1992 and requested a defense. Wausau did not provide a defense. Ehlco continued to provide Wausau with information regarding the suit and, in June of 1992, Ehlco informed Wausau of a $1.3 million settlement offer by Union Pacific. Wausau did not object to the reasonableness of this settlement offer. Rather, Wausau merely offered to pay 9% of the settlement and 9% of the defense costs incurred. Ehlco then settled the suit and, as a result, the district court dismissed the suit with prejudice on November 5, 1992. Wausau did not file its complaint seeking a declaratory judgment of noncoverage with regard to the Wyoming suit until February 26, 1993. This was almost four months after the underlying suit was concluded. Thus, Wausau’s declaratory judgment action was untimely as a matter of law.

D. 
Is Prejudice Required as to the Wyoming Suit?

Wausau further argues that estoppel is not proper with regard to the Wyoming suit because Ehlco has never pleaded or proved that it was prejudiced by Wausau’s breach of its duty to defend. Wausau’s argument presumes that prejudice is an element of the estoppel doctrine that must be pleaded and proved by the insured before estoppel applies. None of this court’s cases applying this form of estoppel, however, even discuss prejudice. See 
Waste Management, Inc.
, 144 Ill. 2d at 207-08; 
Clemmons
, 88 Ill. 2d 469; 
Murphy
, 88 Ill. 2d 444; 
Thornton
, 74 Ill. 2d 132. Moreover, several appellate court cases have expressly rejected the requirement of prejudice in this context. 
Aetna Casualty & Surety Co. v. Prestige Casualty Co.
, 195 Ill. App. 3d 660, 665 (1990); 
Casualty Insurance Co. v. Northbrook Property & Casualty Insurance Co.
, 150 Ill. App. 3d 472, 478 (1986); 
Aetna Casualty & Surety Co. v. Coronet Insurance Co.
, 44 Ill. App. 3d 744, 747-

49 (1976). The few cases that Wausau offers in support of a prejudice requirement are inapplicable. Those cases concern a different form of equitable estoppel that arises once an insurer actually assumes an insured’s defense without reserving its rights. See 
Crum & Forster Managers Corp. v. Resolution Trust Corp.
, 156 Ill. 2d 384, 390, 395-97 (1993); 
Maryland Casualty Co. v. Peppers
, 64 Ill. 2d 187, 195-96 (1976); 
American States Insurance Co. v. National Cycle, Inc.
, 260 Ill. App. 3d 299, 305-10 (1994); 
Mid-State Savings & Loan Ass’n v. Illinois Insurance Exchange, Inc.
, 175 Ill. App. 3d 265, 267, 270-72 (1988). Therefore, Wausau’s argument that Ehlco was required to plead and prove prejudice fails.

E. 
Summary as to the Wyoming Site

In summary, we reverse the appellate court’s holding remanding the Wyoming site cause to the circuit court for further proceedings in which Wausau would be allowed to assert its defense of late notice of an occurrence. We hold that the estoppel doctrine bars Wausau from raising its late-notice defenses against Ehlco. We also reject all of Wausau’s requests for cross-relief. Accordingly, we reverse the appellate court’s reversal of the circuit court’s grant of Ehlco’s motion for judgment on the pleadings. The circuit court’s grant to Ehlco of judgment on the pleadings with regard to the Wyoming site is hereby affirmed.

F. 
Section 155 Award as to the Wyoming Suit

We next decide whether the circuit court wrongly awarded Ehlco attorney fees and costs pursuant to section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 1994)) as to the Wyoming suit. Section 155 states in relevant part:

“(1) In any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance or the amount of the loss payable thereunder, or for an unreasonable delay in settling a claim, and it appears to the court that such action or delay is vexatious and unreasonable, the court may allow as part of the taxable costs in the action reasonable attorney fees, other costs, plus [certain penalties.]” 215 ILCS 5/155 (West 1994).

This statute provides “an extracontractual remedy to policyholders.” 
Cramer v. Insurance Exchange Agency
, 174 Ill. 2d 513, 520 (1996). An award under section 155 is proper where an insurer has acted vexatiously and unreasonably in refusing to defend its insured. 
Richardson v. Illinois Power Co.
, 217 Ill. App. 3d 708, 711 (1991).

Applying section 155, the circuit court in the instant case concluded that Wausau’s conduct in refusing to defend Ehlco in the Wyoming suit was vexatious and unreasonable. Accordingly, the circuit court declared Wausau liable for all attorney fees and costs in the declaratory judgment action with respect to the Wyoming site. The appellate court, in addressing the Wyoming site, held that the circuit court did not abuse its discretion in declaring Ehlco entitled to section 155 fees and costs. Wausau now contends that the appellate court erred in reaching this conclusion.

We first determine the proper standard of review to be applied. Generally, an abuse of discretion standard is utilized to review a circuit court’s decision to award attorney fees and costs under section 155. See, 
e.g.
,  
Keller v. State Farm Insurance Co.
, 180 Ill. App. 3d 539, 554-55 (1989). In this declaratory action below, however, the circuit court found Ehlco to be entitled to section 155 fees and costs when it granted Ehlco’s motions for judgment on the pleadings. We must therefore apply the standard of review that is appropriate for a grant of judgment on the pleadings. 
Cf.
 
Mobil Oil Corp. v. Maryland Casualty Co.
, 288 Ill. App. 3d 743, 751-55 (1997) (applying 
de novo
 standard of review to a section 155 award made in a grant of summary judgment). As earlier noted, judgment on the pleadings is proper where the admissions in the pleadings disclose that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.

We agree with the circuit court that the admissions in the pleadings entitle Ehlco to section 155 fees and costs. It is undisputed that Ehlco first sent notice of the Wyoming suit to Wausau in January of 1992 and requested a prompt response regarding defense. Wausau failed to provide Ehlco with a defense. Rather, Wausau asserted only that it was searching for its policies. Ehlco continually implored Wausau to reconsider its refusal to defend, to no avail. Ehlco settled the suit against it without Wausau’s assistance. Ultimately, Wausau waited until February of 1993, over one year after it first received notice and nearly four months after the Wyoming suit was concluded, before filing its own complaint seeking a declaratory judgment of noncoverage. These undisputed facts compel the legal conclusion that Wausau’s refusal to defend the Wyoming suit was vexatious and unreasonable as a matter of law. We therefore affirm the circuit court’s conclusion that Ehlco is entitled to section 155 attorney fees and costs in the declaratory judgment action with respect to the Wyoming site.

Wausau additionally maintains that the section 155 award was improper because Wausau had asserted a 
bona fide
 defense to coverage. In support, Wausau briefly mentions its defense of late notice of an occurrence in the Wyoming action, but offers no argument as to how this defense qualifies as 
bona fide
. Since Wausau’s argument offers no basis on which to reverse the section 155 award, we decline to do so.

G. 
Heath

The final issue in this appeal concerns Heath, a defendant insurance company and Hines’ excess insurer. The circuit court entered judgment for Heath. In the appellate court, Wausau contended that the circuit court had erred in precluding Wausau from pursuing claims against Heath for contribution, subrogation, and unjust enrichment. The appellate court held that Wausau waived those claims for purposes of appeal because Wausau failed to raise them in the circuit court.

Wausau now contends that the appellate court erred in holding that Wausau waived those claims. We disagree. Issues raised for the first time on appeal are waived. 
Haudrich v. Howmedica, Inc.
, 169 Ill. 2d 525, 536 (1996). Our review of the record discloses that Wausau did not raise these claims in the circuit court. We therefore affirm the appellate court’s application of waiver here.

CONCLUSION

For the reasons stated, we reverse the appellate court’s holding that Wausau did not have a duty to defend with regard to the Mena site because no sufficient suit was filed. We, however, affirm the appellate court’s reversal of the judgment on the pleadings as to the Mena site because the pleadings fail to demonstrate that Wausau’s duty to defend the Arkansas suit was properly triggered by actual notice of that suit. Accordingly, we reverse the circuit court’s award to Ehlco of judgment on the pleadings as to the Mena site. This cause is remanded to the appellate court for consideration of any issues that were raised but which the appellate court did not reach as a result of its Mena rulings. As earlier noted, the appellate court, on remand, should be cognizant of the rulings in this opinion and proceed accordingly. The appellate court need resolve only those issues that it deems appropriate for resolution, in light of our holdings here. After resolving these issues, the appellate court should remand this cause to the circuit court for further proceedings consistent with this opinion, unless the appellate court’s resolution of the issues before it makes such further proceedings improper or unnecessary.

We reverse the appellate court’s holding permitting Wausau to assert its defense of late notice of an occurrence as to the Wyoming site. In addition, we reject all of Wausau’s requests for cross-relief as to that site. Accordingly, we reverse the appellate court’s reversal of the circuit court’s award to Ehlco of judgment on the pleadings as to the Wyoming site. The circuit court’s award to Ehlco of judgment on the pleadings with regard to the Wyoming site is affirmed. The section 155 award as to the Wyoming site is affirmed. The appellate court’s ruling concerning Heath is also affirmed.

 Appellate court judgment affirmed in part

 and reversed in part;

circuit court judgment affirmed in part

 and reversed in part;

cause remanded with directions.

JUSTICE RATHJE took no part in the consideration or decision of this case.