THIRD DIVISION

December 4, 2002

No. 1-02-1288

GOULD & RATNER, )    Appeal from the

) Circuit Court of

Plaintiff-Appellant, )    Cook County. 

)  

v. ) 

) 

VIGILANT INSURANCE COMPANY, )    Honorable

) Allen S. Goldberg,

Defendant-Appellee. ) Judge Presiding.

JUSTICE WOLFSON delivered the opinion of the court:

This dispute is about the extent of coverage provided to a law firm in a general liability policy.  

Gould & Ratner, a law firm, purchased the insurance policy from Vigilant Insurance Company doing business as Chubb Group of Insurance Companies (Vigilant).  Gould & Ratner was sued by David Carmell for defamation and breach of fiduciary duty (the underlying suit).  Gould & Ratner notified Vigilant of the suit.  Vigilant said it had no duty to defend or indemnify Gould & Ratner in the underlying suit because Carmell's claims were excluded from coverage.  Gould & Ratner defended itself and eventually settled the underlying suit.

Gould & Ratner then sued Vigilant for breach of the insurance contract.  Vigilant filed a countercomplaint for a declaratory judgment.  Vigilant also filed an answer and affirmative defenses.  On Vigilant's motion, the trial court granted summary judgment in Vigilant's favor on both Gould & Ratner's suit and Vigilant's countersuit.  

Gould & Ratner appeals, contending: (1) Vigilant breached its duty to defend by neither defending Gould & Ratner under a reservation of rights nor filing a timely declaratory judgment action; and (2) Vigilant's countercomplaint was untimely as a matter of law and an improper basis for summary judgment.  We affirm.

FACTS

The Insurance Policy

Gould & Ratner purchased a commercial insurance policy from Vigilant for the term July 15, 1996, to July 15, 1997.  The policy included coverage for "personal injury *** if caused by an offense committed during the policy period."  "Personal injury" was defined in the policy as 

"injury, other than bodily injury, arising out of one or more of the following offenses committed in the course of your business, other than your advertising activities:

***

4.   oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services ***."

The insurance policy contained a "Professional Exclusion."  This exclusion provided:

"With respect to 
bodily injury
, 
property damage
, 
personal injury
 or 
advertising injury
 or any obligations assumed by contract:

This insurance does not apply to any claim or suit against the Insured for:

a. rendering or failing to render written or oral professional legal services or advice; or

b. rendering or failing to render any other written or oral services or advice that are not ordinary to the practice of law;

whether or not the Insured is acting in the capacity of a lawyer."  (Emphasis in original.)

The insurance policy also contained an exclusion for:

"
Personal injury
 or 
advertising injury
:

1.  arising out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity; ***."  (Emphasis in original.)

The Underlying Suit

On February 13, 1997, Carmell filed a six-count complaint against Gould & Ratner and Jonathan Backman, a partner at Gould & Ratner, for defamation and breach of fiduciary duty.  

According to the complaint, Carmell was a client of Gould & Ratner.  In 1996, Apex Automotive Warehouse, L.P. (Apex) filed bankruptcy.  During the bankruptcy proceedings, Gould & Ratner also represented Apex.  

In the complaint, Carmell alleged that on August 14, 1996, Backman faxed to several people a letter containing unfavorable statements about Carmell.  Carmell alleged the statements were untrue.  On August 27, 1996, Backman called Carmell as an adverse witness in the Apex bankruptcy proceedings and cross-examined Carmell utilizing information that was protected by the attorney-client privilege.  On November 5, 1996, Backman faxed to various people another letter containing unfavorable statements about Carmell.  Carmell alleged those statements were not true.  

Gould & Ratner promptly tendered the complaint to Vigilant requesting confirmation of coverage.  On March 18, 1997, Vigilant refused to defend or indemnify Gould & Ratner.  Vigilant said the insurance policy did not cover the breach of fiduciary claims.  The defamation claims, Vigilant said, fell within the scope of both the Professional Exclusion and the Intentional Falsehood Exclusion.  

Gould & Ratner subsequently settled the suit with Carmell; the Carmell suit was dismissed with prejudice on July 27, 2000.  

On January 8, 2001, Gould & Ratner filed suit against Vigilant for breach of contract.  On February 26, 2001, Vigilant filed a countercomplaint for declaratory judgment seeking a declaration of noncoverage and no duty to defend.

Gould & Ratner filed a motion to dismiss.  Gould & Ratner contended Vigilant's countercomplaint was untimely as a matter of law, citing 
Employers Insurance of Wausau v. Ehlco Liquidating Trust
, 186 Ill. 2d 127, 708 N.E.2d 1122 (1999), and 
Clemmons v. Travelers Insurance Company
, 88 Ill. 2d 469, 430 N.E.2d 1104 (1981) in support of its contention.

On August 10, 2001, the court granted Gould & Ratner's motion to dismiss Vigilant's countercomplaint, holding the countercomplaint was "untimely as a matter of law."  

On September 7, 2001, Vigilant filed an answer and affirmative defenses.  In its affirmative defenses, Vigilant said Carmell's suit was not covered under the policy because it fell within the scope of both the Professional Exclusion and the Intentional Falsehood Exclusion.  

Gould & Ratner unsuccessfully moved to strike and dismiss Vigilant's affirmative defenses.  Gould & Ratner contended Vigilant was estopped from raising these affirmative defenses because it refused to either defend under a reservation of rights or timely file a suit for declaratory judgment.  

On October 24, 2001, Vigilant filed a motion to reconsider the court's August 10 order dismissing its countercomplaint.  

On December 19, 2001, the court, relying on 
Pekin Insurance Company v. L.J. Shaw & Company
, 291 Ill. App. 3d 888, 684 N.E.2d 853 (1997), said, "[T]he allegations of the 
Carmell
 complaint fit squarely and unambiguously within [the Professional Exclusion] and as a result Vigilant had no duty to defend."  Based on this finding, the court granted Vigilant's motion to reconsider, vacated its August 10, 2001, order dismissing Vigilant's countercomplaint, and denied Gould & Ratner's motion to dismiss the countercomplaint.

On February 7, 2002, Vigilant filed a motion for summary judgment, relying primarily on 
Pekin Insurance Company
 and the trial court's ruling on the motion to reconsider.  On April 9, 2002, the trial court granted Vigilant's motion for summary judgment on both Gould & Ratner's suit and Vigilant's countersuit.  This appeal followed.

DECISION

The Professional Services Exclusion

Gould & Ratner contends the trial court erred in granting summary judgment in favor of Vigilant.  Gould & Ratner says Vigilant breached its duty to defend Gould & Ratner because the underlying claim potentially fell within the coverage of the insurance policy.  In addition, says Gould & Ratner, since Vigilant failed to either defend under a reservation of rights or file a timely declaratory judgment action, Vigilant is estopped from asserting policy defenses.

Vigilant says the doctrine of estoppel does not apply here because Vigilant had no duty to defend.  According to Vigilant, the policy 
clearly
 provided no coverage or potential for coverage for the claims raised in the underlying suit.  For this reason, Vigilant says, the trial court did not err in granting summary judgment in its favor.

Summary judgment is proper where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 102, 607 N.E.2d 1204 (1993).  The interpretation of insurance policy provisions is a question of law suitable for summary judgment.  
Lexmark International, Inc. v. Transportation Insurance Co.
, 327 Ill. App. 3d 128, 134-35, 761 N.E.2d 1214 (2001).  We review a trial court's ruling on a motion for summary judgment 
de
 
novo
.  
Outboard Marine Corp.
, 154 Ill. 2d at 102.

If an underlying complaint alleges facts within or potentially within coverage and the policy includes a duty to defend, the insurer is obliged to defend the insured.  
Ehlco Liquidating Trust
, 186 Ill. 2d at 153.  But an insurer has no duty to defend where it is "
clear
 from the facts of the underlying complaint[] that the allegations failed to state facts which bring the case within, or potentially within, the policy's coverage."  (Emphasis in original.)  
Ehlco Liquidating Trust
, 186 Ill. 2d at 153 (quoting 
U.S. Fidelity & Guaranty Co. v. Wilkins Insulation Co.
, 144 Ill. 2d 64, 74, 578 N.E.2d 926 (1991)).   

The doctrine of estoppel provides that:

"an insurer which takes the position that a complaint 
potentially alleging coverage
 is not covered under a policy that includes a duty to defend may not simply refuse to defend the insured.  Rather, the insurer has two options: (1) defend the suit under a reservation of rights or (2) seek a declaratory judgment that there is no coverage.  If the insurer fails to take either of these steps and is later found to have wrongfully denied coverage, the insurer is estopped from raising policy defenses to coverage. [Citations.]"  (Emphasis added.)  
Ehlco Liquidating Trust
, 186 Ill. 2d at 150-51.

This doctrine does 
not
 apply if the insurer has no duty to defend.  
Ehlco Liquidating Trust
, 186 Ill. 2d at 151.  

To determine whether the underlying complaint alleges facts that potentially fall within the policy's coverage, we must "ascertain and give effect to the intentions of the parties as expressed in [the policy]."  
American States Insurance Co. v. Koloms
, 177 Ill. 2d 473, 479, 687 N.E.2d 72 (1997).  If the policy terms are clear and unambiguous, "they must be given their plain and ordinary meaning."  
Koloms
, 177 Ill. 2d at 479.  But if they are subject to more than one meaning, they will be construed against the insurer.  
Koloms
, 177 Ill. 2d at 479.  Provisions that limit or exclude coverage also are to be construed against the insurer.  
Koloms
, 177 Ill. 2d at 478.  However, we will not search for nonexistent ambiguities.  
Pekin Insurance Co.
, 291 Ill. App. 3d at 892.

In 
Pekin Insurance Company v. L.J. Shaw & Company
, we were faced with a case similar to this one.  Pekin Insurance Company provided L.J. Shaw & Company with a businessowners policy that also covered its employee, William Hall.  
Pekin Insurance Co.
, 291 Ill. App. 3d at 889.  The insurance policy provided coverage for personal injury.  The policy defined "personal injury" as:

" 'injury *** arising out of one or more of the following offenses:

***

d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services[.]' "  
Pekin Insurance Co.
, 291 Ill. App. 3d at 890-91.

The policy also contained a professional services exclusion, which excluded:

" 'j. 'Bodily injury', 'property damage', 'personal injury' or 'advertising injury' due to rendering or failure to render any professional service.' "  
Pekin Insurance Co.
, 291 Ill. App. 3d at 890.

Litho Productions, Inc., suffered a loss.  Shaw and Hall represented Litho's insurers in the initial discussions with Litho over the claim.  Litho was represented by Joseph P. Caufield & Associates, Inc., to negotiate the claim.  
Pekin Insurance Co.
, 291 Ill. App. 3d at 889.

Caufield later sued Shaw and Hall for, among other things, intentional interference with contract and civil conspiracy for falsely representing that Caufield overstated the damages.  
Pekin Insurance Co.
, 291 Ill. App. 3d at 890.  The underlying complaint alleged that the torts occurred during Shaw's and Hall's negotiations over Litho's claim.  
Pekin Insurance Co.
, 291 Ill. App. 3d at 890.

Shaw and Hall tendered the complaint to Pekin Insurance Company.  Pekin refused coverage and filed an action seeking a declaration it had no duty defend or indemnify Shaw and Hall.  Pekin contended the allegations in the underlying complaint fell within the insurance policy's professional services exclusion.  Shaw and Hall contended the underlying claims were covered because the policy covered personal injury and the claims fell within the definition of personal injury.  
Pekin Insurance Co.
, 291 Ill. App. 3d at 890.

On cross-motions for summary judgment, the trial court granted summary judgment in favor of Shaw and Hall, holding Pekin had a duty to defend because the professional services exclusion created an ambiguity.  
Pekin Insurance Co.
, 291 Ill. App. 3d at 891.  The trial court said the exclusion did not apply to the underlying complaint and was not intended to apply to third parties other than Shaw's and Hall's clients.  
Pekin Insurance Co.
, 291 Ill. App. 3d at 891.  We reversed and entered judgment in favor of Pekin.

We found the underlying complaint alleged Shaw and Hall were retained to render professional services, and during the course of rendering those services, Shaw and Hall caused Caufield to suffer damages.  
Pekin Insurance Co.
, 291 Ill. App. 3d at 896.  We also concluded "the applicability of a professional services exclusion is not limited to actions brought by the client of the insured."  
Pekin Insurance Co.
, 291 Ill. App. 3d at 896.  Whether the underlying plaintiff is the client of the insured does not matter.  He may allege injuries falling within the terms of the exclusion.  We concluded the clear and unambiguous language of the policy relieved Pekin of any duty to defend Shaw and Hall.  
Pekin Insurance Co.
, 291 Ill. App. 3d at 897.

In 
Pekin Insurance Company
, we relied on the analysis and holdings in 
Hurst-Rosche Engineers v. Commercial Union Insurance Company
, 51 F.3d 1336 (7th Cir. 1995) and 
Erie Insurance Group v. Alliance Environmental, Inc.
, 921 F. Supp. 537 (S.D. Ind. 1996). 

In 
Hurst-Rosche Engineers
, the insured, an engineering firm, was sued for libel and tortious interference with contract based on the contents of a letter the firm issued to a party that was not its client concerning a performance bond.  The insured sought coverage under the definition of "personal injury" in its general liability policy.  
Hurst-Rosche Engineers
, 51 F.3d at 1340.  The insurer denied coverage based on the professional services exclusion, which excluded injuries " 'arising out of the rendering or failure to render any professional services ***.' "  
Hurst-Rosche Engineers
, 51 F.3d at 1340.

Applying Illinois law, the Seventh Circuit Court of Appeals concluded the underlying claims arose from the insured's rendering of professional services.  
Hurst-Rosche Engineers
, 51 F.3d at 1343.  The court also found the underlying claims fell "squarely within the professional services exclusion."  
Hurst-Rosche Engineers
, 51 F.3d at 1344.

In 
Erie Insurance Group
, a school contracted Sear Corporation to remove asbestos from the building.  The school also hired the insureds to investigate the source of the asbestos.  The insureds reported Sear failed to remove all the asbestos and was negligent in failing to do so.  Sear sued the insureds for tortious interference with a contractual relationship, defamation, and civil rights violations.  The insureds submitted the claim to the insurer, and the insurer denied coverage and filed suit.  
Erie Insurance Group
, 921 F. Supp. at 540.

The issue before the District Court for the Southern District of Indiana was whether the policy exclusion for damages " 'due to *** any service of a professional nature' " applied to the underlying suit.  
Erie Insurance Group
, 921 F. Supp. at 541.  The court rejected the insureds' contention that the exclusion was limited to claims brought by the recipient of the insureds' professional services.  
Erie Insurance Group
, 921 F. Supp. at 542.  The court said the exclusion did "not require privity between the insured and the claimant."  
Erie Insurance Group
, 921 F. Supp. at 542.

The proper inquiry was "whether the claimant is seeking to impose liability for acts which were taken in the course of providing professional services and which drew upon (or at least should have drawn upon) the professional's training, skill, experience, or knowledge."  
Erie Insurance Group
, 921 F. Supp. at  543.  Employing this standard, the court concluded the professional services exclusion applied to the underlying suit.  
Erie Insurance Group
, 921 F. Supp. at 547.
(footnote: 1)
 Gould & Ratner contends 
Pekin Insurance Company
 does not apply here because the language of the exclusion in this case differs from the policy language in 
Pekin Insurance Company
.  By employing "due to" in its professional services exclusion, Pekin Insurance Company intended its exclusion to encompass not only actions for "(1) rendering or (2) failing to render" professional services, but also actions "ancillary to such actions."  Here, the exclusion precludes coverage for "claims *** 
for
 rendering or failing to render written or oral professional legal services or advice ***."  Gould & Ratner says Carmell's complaint did not allege claims 
for
 rendering or failing to render professional services.  Rather, the complaint alleges claims "
as a result
 of written statements made by Backman in the course of representing a third party, Apex." (Emphasis added.)  (Gould & Ratner's Br. At p.11.) 

Gould & Ratner is arguing about a distinction without a difference.  The 
American Heritage College Dictionary
 (3d ed. 2000) defines both "for" and "due to" as "because of."  
American Heritage College Dictionary
, at 424, 531.  Although the dictionary provides many other definitions for the word "for," none of the ones that may be applicable in this instance support Gould & Ratner's narrow interpretation.
(footnote: 2)
 Gould & Ratner provides no support for its attempt to distinguish the language in 
Pekin Insurance Company
, 
Hurst-Rosche Engineers
, and 
Erie Insurance Group
 from the language employed here.  We were unable to find a case that analyzed the scope of a professional services exclusion that used the word "for."  Given the lack of support for Gould & Ratner's theory as well as the dictionary definitions of the terms at issue here, we conclude that in this instance, "for" should be accorded the same meaning as "due to."  Dictionary or not, we do not see any difference.

Gould & Ratner contends Vigilant's subsequent change of the language in the exclusion is evidence that "for" as used in the policy exclusion is narrower than "due to" and "arising out of."  (After 
Pekin Insurance Company
 was issued, Vigilant changed the language of its exclusion to exclude claims "arising out of, or in any way related to: professional legal services or advice.")

Gould & Ratner's contention has no bearing on this case.  Whether Vigilant changed its Professional Exclusion after 
Pekin Insurance Company
 was decided does not affect our interpretation of the policy language currently before us.  The change could have been made for many reasons, none of which has any particular bearing on this dispute.     

Because the professional services exclusion in this case is essentially the same as that in 
Pekin Insurance Company
, the holding in 
Pekin Insurance Company
 governs here. 

In Carmell's complaint, he alleged Backman and Gould & Ratner represented Apex.  The alleged defamatory statements were contained in two letters that were attached to the complaint.  The letters, printed on firm letterhead, show that Backman was responding to a request for documents and information from another attorney representing Carmell.  Carmell's breach of fiduciary claims arose from Backman's cross-examination of Carmell during judicial proceedings.  

Carmell's complaint alleges Backman committed the acts of defamation and breach of fiduciary duty while rendering professional services.  It has been suggested the exclusion applies only to situations where a client is suing his or her lawyer for malpractice or some other misconduct.  But we believe the exclusion is broader than that.  The final words of the Professional Exclusion are: "whether or not the Insured is acting in the capacity of a lawyer."  That phrase takes the exclusion beyond lawyer-client relationships and to the facts of this case.  Backman was not acting as Carmell's lawyer when the alleged defamatory statements were made.  The exclusion clearly embraces Backman's conduct.  

Because there was no coverage for the underlying claims, we conclude Vigilant had no duty to defend Gould & Ratner.

Timeliness of Declaratory Judgment Action

Gould & Ratner contends Vigilant's action for declaratory judgment is untimely as a matter of law because Vigilant did not file this action until seven months after the underlying suit was settled and dismissed with prejudice.
(footnote: 3)  Gould & Ratner relies on the following passage from 
Ehlco Liquidating Trust
:

"Where an insurer waits to bring its declaratory judgment action until after the underlying action had been resolved by a judgment or a settlement, the insurer's declaratory judgment action is untimely as a matter of law."  
Ehlco Liquidating Trust
, 186 Ill. 2d at 157.

Vigilant contends the insurer's duty to file a declaratory judgment action is tied to its duty to defend.  Conversely, where the insurer clearly has no duty to defend, he has no obligation to file a declaratory judgment action before the underlying suit is resolved.

We agree with Vigilant.  In 
Ehlco Liquidating Trust
, the insured tendered the defense of an underlying suit to the insurer, Wausau.  
Ehlco Liquidating Trust
, 186 Ill. 2d at 134.  Wausau did not defend the underlying suit, nor did it promptly file a suit for declaratory judgment.  
Ehlco Liquidating Trust
, 186 Ill. 2d at 134.  Wausau eventually filed a declaratory judgment action, four months after the underlying suit was resolved.  
Ehlco Liquidating Trust
, 186 Ill. 2d at 157.  One of the issues on appeal with whether the doctrine of estoppel barred Wausau from raising policy defenses.  
Ehlco Liquidating Trust
, 186 Ill. 2d at 157.

The rule Gould & Ratner relies on in support of its contention was part of the court's analysis of the application of the estoppel doctrine to Wausau.  In an attempt to avoid the application of the doctrine, Wausau contended it timely filed its declaratory judgment action.  
Ehlco Liquidating Trust
, 186 Ill. 2d at 157.  The court held the declaratory judgment action filed after the underlying suit had been resolved was untimely as a matter of law.  
Ehlco Liquidating Trust
, 186 Ill. 2d at 157.  Because Wausau had a duty to defend, and neither defended under a reservation of rights nor timely filed a declaratory judgment action, estoppel applied in that case.  
Ehlco Liquidating Trust
, 186 Ill. 2d at 150-59.  The court said:

"This estoppel doctrine applies only where an insurer has breached its duty to defend.  Thus, a court inquires whether the insurer had a duty to defend and whether it breached that duty.  [Citation.]  Application of the estoppel doctrine is not appropriate if the insurer had no duty to defend, or if the insurer's duty to defend was not properly triggered.  These circumstances include where the insurer was given no opportunity to defend; where there was no insurance policy in existence; and where, when the policy and the complaint are compared, there clearly was no coverage or potential for coverage. [Citations.]"  
Ehlco Liquidating Trust
, 186 Ill. 2d at 151.

Here, we do not have to consider whether Vigilant timely filed its declaratory judgment action as a matter of law because Vigilant had no duty to defend and the doctrine of estoppel does not apply. 

Absent a clear duty to defend, an insurer would have no reason or obligation to file a declaratory judgment before the underlying suit is resolved.  To hold to the contrary would lead to an illogical result: insurers would be required to promptly file actions for declaratory judgments to preserve their rights every time they are informed of a claim from an insured, even where there clearly is no potential for coverage.  

CONCLUSION

We conclude the Professional Exclusion in this case is analogous to the one we reviewed in 
Pekin Insurance Company
.  Following our analysis and holding in 
Pekin Insurance Company
 and comparing the allegations in the underlying complaint to the Professional Exclusion, Vigilant had no duty to defend Gould & Ratner.  Absent a duty to defend, the doctrine of estoppel does not apply here, and Vigilant's suit for declaratory judgment was not untimely.  The trial court did not err in granting summary judgment in favor of Vigilant.

We affirm.

SOUTH, P.J., concurs.

HOFFMAN, J., dissents.

JUSTICE HOFFMAN, dissenting:

Resolution of this appeal requires the construction of the professional services exclusion contained within a general liability policy of insurance issued by Vigilant Insurance Company (Vigilant).  The majority has correctly set forth the general standards to be applied in construing an insurance policy.  However, I am compelled to dissent because I believe that the majority has misapplied those standards by failing to interpret arguably ambiguous terms in the subject policy in favor of coverage.  See 
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 119, 607 N.E.2d 1204 (1993).

The majority has accurately set forth the facts of this case.  Succinctly put, David Carmell filed a six-count complaint against the law firm of Gould & Ratner and one of its partners, Jonathan Backman.  Two of the counts in Carmell's complaint stated claims for defamation against Gould & Ratner by reason of certain letters Backman wrote in the course of the firm's representation of Apex Automotive Warehouse, L.P., in a bankruptcy proceeding.  Gould & Ratner tendered the defense of the Carmell action to its insurer, Vigilant.  Vigilant denied coverage under the general liability policy it had issued to Gould & Ratner, claiming, 
inter
 
alia
, that the defamation claims fell within the scope of a policy exclusion for professional services.  As a consequence, Vigilant refused to defend Gould & Ratner.  After settling the Carmell suit, Gould & Ratner filed the instant action against Vigilant for breach of contract.

In affirming the summary judgment entered in favor of Vigilant, the majority relies primarily upon the holding in 
Pekin Insurance Co. v. L.J. Shaw & Co.
, 291 Ill. App. 3d 888, 684 N.E.2d 853 (1997) (
Pekin
) and finds that the defamation actions asserted against Gould & Ratner in the Carmell suit fall within the professional services exclusion at issue.  I disagree.  Rather, I believe that the wording of the professional services exclusion in the Vigilant policy is readily distinguishable from the exclusion at issue in 
Pekin
.

In 
Pekin
, the policy at issue excluded coverage for certain damages "due to rendering or failure to render any professional services."  The 
Pekin
 court held that the exclusion was applicable to actions brought by one whose damages were caused by the insured's rendering or failing to render professional services and was not limited to actions brought by a client of the insured.  
Pekin
, 291 Ill. App. 3d at 894-97.  In so holding, the court relied upon the holdings in 
Hurst-Rosche Engineers, Inc. v. Commercial Union Insurance Co.
, 51 F.3d 1336 (7th Cir. 1995) (
Hurst-Rosche
) and 
Erie Insurance Group v. Alliance Environmental, Inc.
, 921 F. Supp. 537 (S.D. Ind. 1996) (
Erie
).  
Pekin
, 291 Ill. App. 3d at 892-97.  In 
Hurst-Rosche
, the court determined that actions for libel and tortious interference with contract asserted against the insured engineering firm by a non-client and arising out of a letter which a firm employee wrote in the course of performing duties for a client fell within the scope of a policy provision which excluded coverage for damages "arising out of the rendering or failure to render any professional services ***."  
Hurst-Rosche
, 51 F. 3d at 1343-44.  In 
Erie
, the policy provision at issue excluded coverage for damages "due to *** any service of a professional nature".  
Erie
, 921 F. Supp. at 542. Citing, 
inter
 
alia
, 
Hurst-Rosche
, the 
Erie
 court concluded that claims of defamation and tortious interference with contract asserted against the insured by a non-client and arising from statements the insured made during the course of performing inspection services for a client fell within the scope of the professional services exclusion.  
Erie
, 921 F. Supp. at 541-47.  The majority concludes that the professional services exclusion contained in the policy issued by Vigilant, like the relevant provisions in 
Pekin
, 
Erie
 and 
Hurst-Rosche
, is not limited to claims or suits brought by a client of the insured.  I disagree.

The professional service exclusions at issue in 
Pekin
, 
Erie
 and 
Hurst-Rosche
 are framed in terms of 
injury
 or 
damage
 "due to" (see 
Pekin
, 291 Ill. App. 3d at 890 and 
Erie
, 921 F. Supp at 541) or "arising out of" (see 
Hurst-Rosche
, 51 F.3d 1340) the rendition or failure to render professional services, not in terms of the legal theory upon which the claim or suit for the damage or injury is based.  See 
Erie
, 921 F. Supp at 542.  As a consequence, these exclusions do not require privity between the insured and the underlying claimant and are not limited to injury or damage suffered by a client of the insured professional.  See 
Pekin
, 291 Ill. App. 3d at 894-97.  In contrast, the professional service exclusion in the Vigilant policy at issue in this case states that the insurance provided does not apply to any "claim or suit" against the insured "for rendering or failing to render written or oral professional legal services or advice ***."  I believe that the exclusion in the Vigilant policy can reasonably be interpreted as being applicable only to claims or suits brought by a client of the insured or a third-party beneficiary of a contract between the insured and its client, since only a client or a third-party beneficiary of an attorney-client relationship has a claim, or can maintain a suit, against an attorney for rendering or failing to render legal services.  See 
Pelham v. Griesheimer
, 92 Ill. 2d 13, 440 N.E.2d 96 (1982).  There is, to my mind, a clear distinction between the wording of the professional service exclusions at issue in 
Pekin
, 
Erie
 and 
Hurst-Rosche
 and the one at issue in this case.  Further, contrary to the declaration of the majority, I believe that the distinction is one with a difference.

In support of its conclusion that the professional service exclusion in the instant case is no different in scope than the one at issue in 
Pekin
, the majority notes that "[t]he 
American Heritage College Dictionary
 (3d ed. 2000) defines both 'for' and 'due to' as 'because of'."  I believe, however, that reliance upon dictionary definitions in many cases is akin to reliance upon expert testimony: you can always find one to say what you need said.

Webster's Third New International Dictionary (Webster's), which bills itself as "The Definitive Merriam-Webster Unabridged Dictionary of the English Language[,]" defines "for" as "on this ground."  Webster's Third New International Dictionary 886 (1981).  If one adopts Webster's definition of the word "for" and construes the professional service exclusion in Vigilant's policy to apply to claims or suits asserted against its insured on the grounds of rendering or failing to render professional legal services, Gould & Ratner's assertion that the exclusion is only applicable to claims or suits brought by a client is no longer easily dismissed. See 
Pelham
, 92 Ill. 2d at 20-25.  In any case, I believe that Gould & Ratner's suggested interpretation is a reasonable one.

As our supreme court stated in 
Outboard Marine Corp. v. Liberty Mutual Insurance Co.
, 154 Ill. 2d 90, 119, 607 N.E.2d 1204 (1993):

"[I]n construing the terms of an insurance policy, the court must ascertain the intent of the parties. [Citation.]  If the terms of the policy are clear and unambiguous, the court must give them their plain, ordinary, popular meaning. [Citation.]  If a term in the policy is subject to more than one reasonable interpretation within the context in which it appears, it is ambiguous. [Citation.]  
Ambiguous terms are construed strictly against the drafter of the policy and in favor or coverage.
 [Citations.]  
This is especially true with respect to exclusionary clauses.
 [Citation.]" (Emphasis added.)

I believe that, at a minimum, the professional services exclusion contained in the Vigilant policy is ambiguous and can reasonably be interpreted as applying only to claims or suits for the rendition of or failure to render legal services brought by a client of the insured attorney or a third-party beneficiary of a contract between the insured attorney and a client.  Since it is clear from the underlying complaint that Carmell's claims for defamation against Gould & Ratner were not based upon his status as a client or a third-party beneficiary or based upon any legal services rendered to him or for his benefit, they do not fall within the scope of the professional services exclusion.  I would, therefore, reverse the judgment of the circuit court and remand this matter for further proceedings.

FOOTNOTES
1:
The Seventh Circuit Court of Appeals affirmed this decision in 
Erie Insurance Group v. Sear Corporation
, 102 F.3d 889 (7th Cir. 1996), but the scope of the professional services exclusion was not at issue on appeal.  
Erie Insurance Group
, 102 F.3d at 891 n.1.

2:
The full definition of "for" is: "1.a. Used to indicate the object, aim, or purpose of an action or activity: for sale. b. Used to indicate a destination: headed for town. 2. Used to indicate the object of a desire, an intention, or a perception: a nose for news. 3.a. Used to indicate the recipient or beneficiary of an action: lunch for us. b. On behalf of: spoke for the members. c. In favor of: Were they for the proposal? 4.a. Used to indicate equivalence or equality: ten dollars for a ticket. b. Used to indicate correlation or correspondence: two steps back for every step forward. 5.a. Used to indicate amount, extent, or duration: walked for miles. b. Used to indicate a specific time: a date for two o'clock. 6.a. As being: take for granted. b. Used to indicate an actual or implied listing or choosing: For one thing, we can't afford it. 7. As a result of; because of: jumped for joy. 8. Used to indicate appropriateness or suitability: It is for the judge to decide. 9. Notwithstanding; despite. 10.a. As regards; concerning: a stickler for neatness. b. Considering the nature or usual character of: spry for his age. c. In honor of: named for her grandmother. -- conj. Because; since."  
American Heritage College Dictionary
, at 531.

3:
Even if Vigilant's action were untimely, the ultimate outcome of this case would be the same for Gould & Ratner: it would not be able to recover for breach of contract from Vigilant.  The trial court granted summary judgment in favor of Vigilant based not only on Vigilant's action, 
but also
 on Gould & Ratner's action.  Summary judgment on Gould & Ratner's action would stand, regardless of whether Vigilant's action was timely.