## In the
# United States Court of Appeals
## For the Seventh Circuit

———————

No. 07-3104

LYLE LYERLA, d/b/a WILDEWOOD CONSTRUCTION,

*Plaintiff-Appellant*,

*v.*

AMCO INSURANCE CO.,

*Defendant-Appellee.*

———————

Appeal from the United States District Court
for the Southern District of Illinois.
No. 06 cv 679—**G. Patrick Murphy**, *Judge.*

———————

ARGUED APRIL 15, 2008—DECIDED AUGUST 4, 2008

———————

Before CUDAHY, KANNE and SYKES, *Circuit Judges*.

CUDAHY, *Circuit Judge*. AMCO Insurance Company
(AMCO) issued a commercial general liability (CGL) policy
to Lyle Lyerla, d/b/a Wildewood Construction (Lyerla).
When Lyerla was sued in a dispute arising out of a con-
struction contract, he tendered notice of the suit to AMCO.
AMCO refused to defend Lyerla and after he settled the
underlying lawsuit, Lyerla sued AMCO for breach of
contract. The district court granted summary judgment
for AMCO and this appeal followed. For the reasons
set forth below, we affirm.

## I. Background

In March 2001, Scott Riddlemoser and Kathleen McNulty (Owners) hired Lyerla to build a residential dwelling according to particular plans and specifications. The construction contract required that construction be completed by July 31, 2001. The contract also gave the Owners 20 days after the house was completed to provide Lyerla "with a list of any defects, incomplete or unsatisfactory items (the 'Punchlist Items') with respect to Contractor's Work." Lyerla was obligated to cure any Punchlist Items within 20 days of receiving the list. Lyerla warranted and guaranteed his work and promised to repair any defects within seven days of receiving notice. In addition, the contract required Lyerla to pay liquidated damages if the project was not completed on time—$100 per day for the first 14 days and $150 per day for each day thereafter.

On January 24, 2002, the Owners sued Lyerla for breach of contract, alleging that he had failed to construct the building pursuant to the agreed-upon plans and specifications; had failed to complete Punchlist Items within the time frame provided under the contract; had failed to build the home in a workmanlike manner; had failed to correct defects in seven days, as required by the contract; and had failed to pay liquidated damages. The Owners sought to recover costs they incurred completing Lyerla's work as well as storage fees, finance charges, loss of work, attorneys' fees and court costs. On March 15, 2002, Lyerla tendered notice of the lawsuit to AMCO. AMCO denied coverage in July 2002. Lyerla settled with the Owners for $53,000.

Lyerla subsequently brought this lawsuit against AMCO in Illinois state court for breach of contract and for violating

the Illinois Insurance Code. AMCO removed the action to federal court and filed a counterclaim against Lyerla seeking a declaration that the underlying claim was not covered by the policy and that AMCO had no duty to defend or indemnify Lyerla.

Both parties moved for summary judgment. In April 2007, the district court held a hearing on the motions and the case was taken under advisement. On May 25, 2007, Lyerla moved to file a supplemental motion for summary judgment based on a recent decision of the Illinois Appellate Court, *Country Mut. Ins. Co. v. Carr*, 867 N.E.2d 1157 (Ill. App. Ct. 2007), and "additional information about the policy in question and additional legal authority that has not yet been given to this court." The court granted Lyerla's motion in part, allowing Lyerla to file a supplemental brief to address recent case law. When Lyerla filed his supplemental brief, AMCO moved to strike on the grounds that rather than simply explaining the relevance of recent case law, Lyerla sought to relitigate issues and presented new arguments in his supplemental brief. The district court granted AMCO's motion but indicated that it would consider *Carr*.

In July 2007, Lyerla moved to amend his complaint in order to add two counts of breach of fiduciary duty. The district court denied this motion and granted summary judgment for AMCO. It concluded that the underlying complaint did not allege an "occurrence" or "property damage" as defined by Lyerla's CGL policy. Lyerla appeals the district court's decision. The basis of federal

jurisdiction is diversity of citizenship.[1] The parties agree that Illinois law governs their dispute.

## II. Analysis

We review an entry of summary judgment *de novo*, construing all facts and drawing all inferences in the light most favorable to the non-moving party. *Abstract & Title Guar. Co., Inc. v. Chicago Ins. Co.*, 489 F.3d 808, 810 (7th Cir. 2007). "Summary judgment is appropriate where the evidence before the court indicates that there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law." *Id*. The construction of an insurance policy is a question of law which we review *de novo*. *Sokol & Co. v. Atl. Mut. Ins. Co.*, 430 F.3d 417, 420 (7th Cir. 2005). "Unambiguous policy language is given its 'plain, ordinary, and popular meaning.' " *Id*. (citing *Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1212 (Ill. 1992)).

Illinois insurance law provides that an insured's duty to defend is broader than its duty to indemnify. *Outboard Marine Corp.*, 607 N.E.2d at 1220. An insurer is obligated to defend its insured if the underlying complaint contains

---

[1] Lylera is domiciled in Illinois and is an Illinois citizen. Wildewood Construction is a sole proprietorship operated by Lyerla and its citizenship for diversity purposes is that of Lyerla. AMCO is an Iowa corporation with its principal place of business in Iowa. Lyerla sought to recover $53,000, the amount of his settlement with the Owners, as well as $50,000 in costs he incurred defending the lawsuit. Thus, the amount in controversy exceeds the jurisdictional minimum of $75,000. 28 U.S.C. § 1332.

allegations that potentially fall within the scope of coverage. *Gen. Agents Ins. Co. of Am., Inc. v. Midwest Sporting Goods Co.*, 828 N.E.2d 1092, 1098 (Ill. 2005). In order to determine whether an insurer has a duty to defend its insured, we must compare the allegations in the underlying complaint to the language of the insurance policy. *Id.* "If the underlying complaint alleges facts within or potentially within policy coverage, an insurer is obligated to defend its insured even if the allegations are groundless, false or fraudulent." *Id.* "An insurer may not justifiably refuse to defend an action against its insured unless it is *clear* from the face of the underlying complaint[ ] that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage." *United States Fid. & Guar. Co. v. Wilkin Insulation Co.*, 578 N.E.2d 926, 930 (Ill. 1991) (emphasis in original). We begin our examination of AMCO's obligations under the CGL policy mindful that "[t]he underlying complaint[ ] and the insurance polic[y] must be liberally construed in favor of the insured." *Id*.

The policy that Lyerla purchased from AMCO provides that AMCO "will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies." The policy :

> applies to "bodily injury" and "property damage" only if:
>
> 1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and
>
> 2) The "bodily injury" or "property damage" occurs during the policy period.

"Occurrence" is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." "Property damage" is defined as:

    a.  Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.  Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

AMCO's duty to defend turns on whether the underlying complaint alleges "property damage" that was caused by an "occurrence," that is, an "accident." If it does, AMCO's obligations to Lyerla will be triggered unless a particular policy exclusion eliminates coverage. *See Viking Constr. Mgmt., Inc. v. Liberty Mut. Ins. Co.*, 831 N.E.2d 1, 6 (Ill. App. Ct. 2005).

A.  <u>"Property damage" caused by an "occurrence" under Illinois law</u>

  Lyerla contends that the district court erred in concluding that the underlying complaint in the Owners' lawsuit against him did not allege "property damage" caused by an "occurrence" as defined by Lyerla's CGL policy. Although Lyerla's CGL policy defines an "occurrence" as an "accident," it does not define "accident." Illinois courts construing insurance policies have defined "accident" as "an unforeseen occurrence, usually of an untoward or disastrous character or an undesigned, sudden, or unexpected event of an inflictive or unfortunate

character." *Westfield Nat'l Ins. Co. v. Cont'l Cmty. Bank & Trust Co.*, 804 N.E.2d 601, 605 (Ill. App. Ct. 2003) (citing *Aetna Cas. & Sur. Co. v. Freyer*, 411 N.E.2d 1157, 1159 (Ill. App. Ct. 1980)). In cases involving the interpretation of CGL policies like the one at issue in this case, Illinois courts have reasoned that damage to a construction project resulting from construction defects is not an "accident" or "occurrence" because it represents the natural and ordinary consequence of faulty construction.[2]

---

[2] There is considerable disagreement among the states as to whether defective work can constitute an "occurrence" under a standard CGL policy. Some states have concluded that damage to the work of the insured caused by faulty workmanship is not fortuitous and therefore is not an "accident" or "occurrence." *See, e.g.*, *Auto-Owners Ins. Co. v. Home Pride Cos.*, 684 N.W.2d 571, 577 (Neb. 2004) ("faulty workmanship, standing alone, is not covered under a standard CGL policy"); *Oak Crest Constr. Co. v. Austin Mut. Ins. Co.*, 998 P.2d 1254, 1257-58 (Or. 2000) (no "occurrence" where insured sought cost of correcting subcontractor's deficient work); *Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co.*, 908 A.2d 888, 899-900 (Pa. 2006) (no "occurrence" where complaint "avers only property damage from poor workmanship to the work product itself"); *L-J, Inc. v. Bituminous Fire & Marine Ins. Co.*, 621 S.E.2d 33, 35-36 (S.C. 2005) (no "occurrence" where only damage alleged was to roads constructed by the insured and where the damage allegedly resulted from faulty work). Recently, however, the highest courts of several states have concluded that faulty workmanship that damages the insured's work can constitute an "occurrence." *See, e.g.*, *United States Fire Ins. Co. v. J.S.U.B., Inc.*, 979 So. 2d 871, 883-86 (Fla. 2007) (noting the analytical inconsistency of treating faulty work that damages third-party property as an "occurrence" but treating

(continued...)

For example, in *Monticello Ins. Co. v. Wil-Freds Constr., Inc.*, 661 N.E.2d 451 (Ill. App. Ct. 1996), a contractor that had entered into an agreement with the City of Naperville to build a municipal building and adjoining parking garage sought coverage under a CGL policy after the city sued it for breach of contract. The city alleged various construction defects, including: cracks in the walls of the garage; leaking in the garage; water damage to the building and basement; defective doors; and other "miscellaneous construction defects." *Id*. at 452. The court concluded that the defects "[were] the natural and ordinary consequences of the improper construction techniques of Wil-Freds and its subcontractors and, thus, [did] not constitute an occurrence within the definition in the CGL policy." *Id.* at 456.

More recently, in *Viking Construction Management, Inc.*, a school district contracted with Viking to manage the construction of a school. Portions of a wall collapsed as a result of inadequate bracing that had been installed by a subcontractor, causing property damage and injuring a construction worker. The school district sued Viking for breach of contract and sought damages that included the cost of repairing and replacing the damaged portion of the building. The court concluded that Liberty Mutual

[2] (...continued)
faulty work that damages the insured's work as foreseeable and hence, not accidental); *Lamar Homes, Inc. v. Mid-Continent Cas. Co.*, 242 S.W.3d 1, 9 (Tex. 2007) (same); *Am. Family Mut. Ins. Co. v. Am. Girl, Inc.*, 673 N.W.2d 65, 70 (Wis. 2004) (damage to warehouse caused by soil settlement beneath the building and occurring because of subcontractor's faulty advice was "property damage" resulting from an "occurrence").

did not have a duty to defend Viking because "the damages claimed by [the district] were the natural and ordinary consequences of defective workmanship and, accordingly, did not constitute an 'occurrence.'" *Viking Constr. Mgmt.*, 831 N.E.2d at 16; *see also Stoneridge Dev. Co., Inc. v. Essex Ins. Co.*, 888 N.E.2d 633, 654 (Ill. App. Ct. 2008) (cracks that developed in home "were not an unforeseen occurrence that would qualify as an 'accident,' because they were the natural and ordinary consequences of defective workmanship"); *State Farm Fire & Cas. Co. v. Tillerson*, 777 N.E.2d 986, 991 (Ill. App. Ct. 2002) ("Where the defect is no more than the natural and ordinary consequences of faulty workmanship, it is not caused by an accident."); *Indiana Ins. Co. v. Hydra Corp.*, 615 N.E.2d 70, 73 (Ill. App. Ct. 1993) (no "occurrence" where the defects in the underlying complaint, "the cracks in the floor and the loose paint on the exterior of the building[,] are the natural and ordinary consequences of installing defective concrete flooring and applying the wrong type of paint"); *Bituminous Cas. Corp. v. Gust K. Newberg Constr. Co.*, 578 N.E.2d 1003, 1010 (Ill. App. Ct. 1991) (no "occurrence" where underlying complaint alleged faulty air conditioning system had been installed in state building because the allegations of extreme "temperatures in the building are no more than the natural and ordinary consequences of installing an inadequate HVAC system"). Precedent thus strongly supports the district court's conclusion that the Owners' allegations of defective work do not constitute an "accident" or "occurrence."

Despite this line of authority, however, there is some support for the position that negligently performed work or defective work can give rise to an "occurrence" in Illinois. In *Prisco Serena Sturm Architects, Ltd. v. Liberty Mut.*

*Ins. Co.*, 126 F.3d 886 (7th Cir. 1997), we concluded that a construction manager's negligent performance of its work resulted in an "occurrence." *Id.* at 891. But that case relied on the fact that "occurrence" as defined by the policy included continuous or repeated exposure to conditions. The insured's negligence in uncovering defects in the construction constituted "continuous or repeated exposure to substantially the same general harmful conditions," and thus, an "occurrence." *Id.*; *see also Wilkin Insulation Co.*, 578 N.E.2d at 932 ("the continuous exposure of the buildings and their contents to released asbestos fibers" constituted an "accident" that resulted in "property damage"). In *Country Mutual Insurance Co. v. Carr*, which was the impetus for Lyerla's supplemental summary judgment memorandum, homeowners sued a general contractor for allegedly negligently placing inappropriate backfill around the basement walls of their home and negligently operating equipment near those walls, resulting in damage to the basement walls and to other parts of the home. 867 N.E.2d at 1159. Country Mutual argued that the underlying complaint against the contractor did not allege an "occurrence" and the trial court agreed, granting the insurer's motion for judgment on the pleadings.

On appeal, the court acknowledged that a number of Illinois courts have concluded that the "natural and ordinary consequences of an act do not constitute an accident," but stated that in determining whether an act or event is an "accident," "the real question is whether the person performing the acts leading to the result intended or expected the result. If the person did not intend or expect the result, then the result was the product of an accident*." Id.* at 1162 (citing *Wilkin Insulation Co.*, 578

N.E.2d at 932; *Yates v. Bankers Life & Cas. Co.*, 111 N.E.2d 516, 517-18 (Ill. 1953); *Lyons v. State Farm Fire & Cas. Co.*, 811 N.E.2d 718, 723 (Ill. App. Ct. 2004)). The court concluded that the underlying complaint did not allege "that defendant, his employees or agents, or subcontractors intended or expected, by their use of allegedly inappropriate backfill material or their allegedly negligent operation of heavy earthmoving equipment near the basement walls, that the walls would move or be damaged." *Id*. at 1162-63. Therefore, the complaint alleged an "accident."

Thus, *Carr* suggests that work that is performed negligently can cause an "occurrence" resulting in "property damage."[3] Ultimately, however, *Carr* does not help Lyerla.

---

[3] AMCO argues that the court's analysis in *Carr* has no bearing on this case because in *Carr*, the underlying lawsuit was a negligence action. In this case, as in *Wil-Freds* and *Viking*, the underlying complaint alleges breach of contract. We recognize that Illinois courts have stated that in general, CGL policies do not provide coverage for breach of contract claims. *See, e.g.*, *Viking Construction*, 831 N.E.2d at 9; *Hydra Corp.*, 615 N.E.2d at 73. But, as courts in other jurisdictions have noted, CGL policies do not distinguish between tort and contract claims. *See, e.g.*, *J.S.U.B., Inc.*, 979 So. 2d at 884; *Am. Girl*, 673 N.W.2d at 77 (" 'Occurrence' is not defined by reference to the legal category of the claim. The term 'tort' does not appear in the CGL policy."). Although breach of contract actions may not be covered because the underlying complaint does not allege "property damage" caused by an "occurrence," *see Hydra Corp.*, 615 N.E.2d at 73-75, or because one of the so-called "business risk" exclusions applies, *see Western Cas. & Sur. Co. v. Brochu*, 475 N.E.2d 872, 878 (Ill. 1985), "[t]he factual allegations

(continued...)

In the present case, the underlying complaint alleges that Lyerla:

> failed to construct the building and other improvements pursuant to the plans and specifications attached to the Construction Contract.

> [F]ailed to Substantially Complete the building and other improvements on or before July 31, 2001.

> * * * *

> failed to complete said Punch List Items as required within 20 days.

> * * * *

> failed to construct the building and other improvements in a "good workmanship manner."

> * * * *

> failed to correct defects within 7 days as required in Section 3.04 of the Construction Contract.

The complaint avers that Lyerla's work did not satisfy his contractual obligations and does not contain any facts alleging "property damage" caused by an "occurrence." The Owners did not allege a physical injury to tangible property, since "tangible property suffers a 'physical' injury when the property is altered in appearance, shape, color or in other material dimension." *Travelers Ins. Co. v. Eljer Mfg., Inc.*, 757 N.E.2d 481, 496 (Ill. 2001). The complaint alleges nothing of the kind. In *Carr*, the underlying

---

[3] (...continued)

of the complaint, rather than the legal theories, determine a duty to defend." *Lyons*, 811 N.E.2d at 722.

complaint alleged that the negligence of the contractor or his subcontractors resulted in damage to the homeowners' basement walls and other parts of their home. As the court in that case recognized, the homeowners "allege[d] physical injury to tangible property, their basement walls." 867 N.E.2d at 1162. Thus, the underlying complaint alleged "property damage" triggering coverage under the contractor's CGL policy. *Id.* In the present case, the underlying complaint alleges that the work called for under the contract was performed improperly or incompletely; that is, it alleges faulty workmanship, not faulty workmanship that damaged property. The cost of repairing or replacing defective work is not "property damage." *See Viking Constr. Mgmt.*, 831 N.E.2d at 17; *Tillerson*, 777 N.E.2d at 991 (no "property damage" where homeowners sought "either the repair or the replacement of defective work or the diminishing value of the home"); *Diamond State Ins. Co. v. Chester-Jenson Co.*, 611 N.E.2d 1083, 1089 (Ill. App. Ct. 1993) ("Mere allegations of repair and modification without any allegations of physical injury are insufficient to invoke coverage under the physical injury prong of the property damage provision.").

Lyerla argues that the underlying complaint alleged "property damage" because the Owners sought to recover storage fees and liquidated damages. As defined by the policy, "[p]roperty damage" includes the "[l]oss of use of tangible property that is not physically injured." Lyerla reasons that by attempting to recover storage fees and liquidated damages, the Owners alleged "loss of use," and, therefore, "property damage." The liquidated damages do not represent costs incurred by the Owners for loss of use of tangible property; they are costs imposed on Lyerla pursuant to the contract for failure to complete the

project on time. As for the storage fees, even if we construe the Owners' claim for storage fees as alleging a "loss of use" of the house, the policy makes clear that a "loss of use shall be deemed to occur at the time of the 'occurrence' that caused it." Lyerla's failure to complete construction on time is not an "occurrence" within the meaning of the policy.[4]

Lyerla alleges that the defects that gave rise to the Owners' lawsuit resulted from the faulty work of subcontractors, which he did not foresee. Therefore, he reasons, the underlying complaint alleges "property damage" to the completed project caused by an "occurrence." But whether Lyerla expected his subcontractors to perform their work properly is irrelevant where the complaint clearly does not allege any "property damage." Finally, in an attempt to avoid the adverse result dictated by our analysis of the CGL policy language, Lyerla contends that AMCO is estopped from raising policy defenses because it did not defend the suit under a reservation of

---

[4] Lyerla urges us to find coverage in this case based on the subcontractor exception to one of the "business risk" exclusions. Exclusion (*l*) eliminates coverage for " '[p]roperty damage' to 'your work' arising out of it or any part of it and included in the 'products-completed operations hazard.' " The exclusion "does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor." The analysis of exclusions and exceptions thereto only becomes relevant once coverage is established; that is, only if the underlying complaint alleges "property damage" caused by an "occurrence." Because the underlying complaint does not contain allegations creating coverage, we need not consider an exception that restores coverage.

rights or seek a declaratory judgment prior to his settlement with the Owners. The estoppel doctrine provides that an insurer who wrongfully denies coverage "is estopped from raising policy defenses to coverage." *Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 708 N.E.2d 1122, 1133 (Ill. 1999). But the doctrine applies only if the insurer wrongfully refuses to defend the insured.

> Application of the estoppel doctrine is not appropriate if the insurer had no duty to defend, or if the insurer's duty to defend was not properly triggered. These circumstances include where the insurer was given no opportunity to defend; where there was no insurance policy in existence; and *where, when the policy and the complaint are compared, there clearly was no coverage or potential for coverage*.

*Id.* at 1135 (emphasis added); *see also Gould & Ratner v. Vigilant Ins. Co.*, 782 N.E.2d 749, 758 (Ill. App. Ct. 2002) (same). Because the Owners' complaint does not contain allegations that potentially trigger AMCO's duty to defend, AMCO is not estopped from raising policy defenses to coverage.

B.  Lyerla's supplemental memorandum and motion to file an amended complaint

Having concluded our analysis of AMCO's obligations under the CGL policy, we turn to Lyerla's challenges to the district court's rulings. Lyerla argues that the court erred in striking his supplemental memorandum and in refusing to allow him to amend his complaint. We review these decisions of the district court for abuse of discretion. *See Cleveland v. Porca Co.*, 38 F.3d 289, 297 (7th Cir. 1994).

Southern District of Illinois Local Rule 7.1 provides: "An adverse party shall have thirty (30) days after the service . . . of the movant's motion in which to serve and file an answering brief. Failure to timely file an answering brief to a motion may, in the court's discretion, be considered an admission of the merits of the motion." Lyerla did not file a response to AMCO's Motion for Summary Judgment within 30 days. Instead, more than one month after the district court heard arguments on the parties' summary judgment motions, Lyerla sought leave to file a supplemental motion for summary judgment, stating that "[a] recent decision of the Illinois Appellate Court (*Country Mutual Ins. Co. v. Carr*, 2007 WL 899486 (4th Dist. 2007)) prompted a review of the pleadings and legal authority previously cited to this court." Lyerla also represented to the court that "[t]here is additional information about the policy in question and additional legal authority that has not yet been given to this court that supports summary judgment for plaintiffs in this matter." The court granted Lyerla's motion in part and gave him leave to file a supplemental brief addressing recent case law. Lyerla's supplemental memorandum was twenty pages long (his motion for summary judgment was just six pages long) and most of it discussed case law that was available when Lyerla filed his first summary judgment memorandum. AMCO moved to strike the supplemental memorandum. Although it granted AMCO's motion, the court indicated that it would consider *Carr* in resolving the coverage dispute. Lyerla argues that this decision constitutes an abuse of discretion. We disagree.

AMCO suggests that Lyerla attempted to use the supplemental memorandum to compensate for his failure to respond to AMCO's motion for summary judgment, a plausible interpretation of Lyerla's actions. As AMCO

points out, Lyerla's motion for summary judgment was much shorter than the supplemental memorandum and most of it discussed case law that was available when Lyerla filed his motion for summary judgment. In any case, whatever Lyerla's motivation, the supplemental memorandum reargued issues after the district court had taken the summary judgment motions under advisement in disregard of the court's order that Lyerla could file a supplemental memorandum to address recent case law. Lyerla points out that he filed a copy of the proposed supplemental memorandum when he sought leave to file it, and contends that the court was on notice that the substance of the memorandum exceeded the single issue of *Carr*'s relevance. But the court made clear that Lyerla was given leave to file a supplemental memorandum to address recent case law. Lyerla had notice of the scope of the proposed supplemental memorandum. Even after striking the supplemental memorandum, the court indicated that it considered the *Carr* case, the only case Lyerla cited that had been decided after Lyerla's motion for summary judgment was filed. The court's decision to strike the memorandum was not an abuse of discretion.[5]

---

[5]  Lyerla attempts to rely on *Edwards v. Honeywell, Inc.*, 960 F.2d 673 (7th Cir. 1992), but that case does not support the conclusion that the district court abused its discretion in striking the supplemental memorandum. In *Honeywell*, we held that, where Honeywell filed a supplemental memorandum raising a new ground in support of its motion for summary judgment, the plaintiff had 13 days to respond to that new argument before the court could enter summary judgment on that ground.

(continued...)

Lyerla also challenges the district court's refusal to allow him to amend his complaint. A district court's denial of a motion for leave to amend a complaint "will be reversed only if no reasonable person could agree with its decision." *Porca Co.*, 38 F.3d at 297 (quoting *Lac du Flambeau Band of Indians v. Stop Treaty Abuse-Wis., Inc.*, 991 F.2d 1249, 1257 (7th Cir. 1993)). The district court determined that because AMCO's duty to defend had never been triggered, allowing Lyerla to amend his complaint to allege that AMCO breached its fiduciary duty to him was "pointless."

In Illinois, "it is well settled that no fiduciary relationship exists between an insurer and an insured as a matter of law." *Martin v. State Farm Mut. Auto. Ins. Co.*, 808 N.E.2d 47, 51 (Ill. App. Ct. 2004) (citing *Nielsen v. United Servs. Auto. Ass'n*, 612 N.E.2d 526, 530 (Ill. App. Ct. 1993)). The mere fact that Lyerla and AMCO were parties to an insurance contract is, therefore, "insufficient to support a finding of a fiduciary relationship." *Id*. at 52. Lyerla argues that *Beatty v. Doctors' Co.*, 871 N.E.2d 138 (Ill. App. Ct. 2007) supports his contention that AMCO had a fiduciary duty to him. In *Beatty*, the court considered the duty of the insurance company to its insured once the duty to defend had been triggered. *Id*. at 145. In this case, AMCO did not have a duty to defend Lyerla in the underlying lawsuit. The district court acted within its discretion in

---

[5] (...continued)

Otherwise the plaintiff would be deprived of the opportunity to respond to Honeywell's latest arguments. *Id*. at 675. *Honeywell*'s holding is inapposite to the facts in the present case. Here, the court did not deprive Lyerla of the opportunity to respond to AMCO's arguments in favor of summary judgment.

denying Lyerla's request to amend his complaint more than a year after he filed his initial complaint and months after the court had taken the parties' summary judgment motions under advisement.

### III.  Conclusion

For the foregoing reasons, we AFFIRM the district court's grant of summary judgment for AMCO.