# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

**Hunt v. State Farm Mutual Automobile Insurance Co., 2013 IL App (1st) 120561**

---

| | |
|---|---|
| Appellate Court Caption | DARYL C. HUNT, Individually and as Assignee of Deborah Smith, Plaintiff-Appellant, v. STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellee. |
| District & No. | First District, Third Division<br>Docket No. 1-12-0561 |
| Filed<br>Rehearing denied | June 28, 2013<br>July 25, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Summary judgment was properly entered for defendant insurer in an action plaintiff filed as assignee of defendant's insured seeking to enforce the judgment plaintiff obtained against the insured for the automobile accident she caused, since defendant cancelled the policy several months prior to the accident for nonpayment of premiums, and defendant was not estopped from denying liability based on cancellation, especially when it maintained proof of mailing of the cancellation notice on a form acceptable to the United States Postal Service. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-CH-14207; the Hon. Lee Preston, Judge, presiding. |
| Judgment | Affirmed. |

| Counsel on Appeal | Timothy J. Lowery, of Lowery & Associates, LLC, of Barrington, for appellant. |
| | |
| | Frank C. Stevens, of Taylor Miller LLC, of Chicago, for appellee. |

| Panel | JUSTICE HYMAN delivered the judgment of the court, with opinion. Justices Sterba and Pierce concurred in the judgment and opinion. |

## OPINION

¶ 1    Sometimes a legal technicality can turn into a costly mistake, and the law of insurance is saturated with technicalities. The appellant casts the proof of mailing of an automobile cancellation notice as flawed under the Illinois Insurance Code (215 ILCS 5/1 *et seq*. (West 2008)), thereby triggering coverage. But, the facts reveal otherwise, and the technicality disappears.

¶ 2    This declaratory judgment action, brought by appellant Daryl Hunt, as the assignee of Deborah Smith, against Smith's insurer, State Farm Fire and Casualty Company (State Farm),[1] involves cross-motions for summary judgment. Hunt's complaint alleged State Farm breached its duty to defend Smith in an underlying personal injury lawsuit Hunt filed against Smith following an automobile accident and was, therefore, estopped from denying that Smith's insurance policy provided coverage for the accident. Hunt sought to recover the $900,000 judgment entered against Smith. State Farm argued it had no duty to defend Smith in the underlying lawsuit because it cancelled Smith's policy for failure to pay the premium five months before the accident. Both Hunt and State Farm filed cross-motions for summary judgment. Based on the briefs and the arguments of counsel, the trial court granted State Farm's motion for summary judgment and denied Hunt's cross-motion for summary judgment.

¶ 3    Hunt argues the trial court erred in finding State Farm was not liable for the judgment against Smith because State Farm did not properly maintain proof of mailing of Smith's cancellation notice. Therefore, Hunt asserts, the policy was still in effect at the time of the accident and since State Farm neither defended its insured nor filed a declaratory judgment action, it is estopped from denying liability on the ground of cancellation. For the following reasons, we affirm the trial court.

¶ 4                                I. Background

¶ 5    In March 2005, State Farm issued two insurance polices to Deborah Smith for two

---

[1]The insurance policy was issued by State Farm Fire and Casualty Company, which was incorrectly named as State Farm Mutual Automobile Insurance Company in plaintiff's complaint.

automobiles she owned. Smith arranged to have the premiums paid by automatic monthly withdrawal from her checking account. Smith made an initial payment of $151.96, but when her next payment was due in April 2005, the bank notified State Farm there were insufficient funds in Smith's account to make the payment. State Farm automatically generated a cancellation notice, which was mailed to Smith on April 15, 2005, informing her that the polices were cancelled as of April 29, 2005.

¶ 6        On October 11, 2005, Smith was involved in a motor vehicle accident with Hunt, who was driving an ambulance while employed in his official capacity with the Kankakee fire department. Hunt filed a lawsuit against Smith in Kankakee County. State Farm did not defend Smith in that lawsuit, and she was represented by her own attorney. On March 10, 2008, the court in Kankakee County entered a stipulated order of judgment in favor of Hunt for $900,000. In the judgment, Smith admitted she negligently caused the accident and violated section 11-907 of the Illinois Vehicle Code, by failing to yield to an emergency vehicle. 625 ILCS 5/11-907 (West 2008). Smith assigned her rights against State Farm to Hunt, who agreed to only enforce the judgment against any policies of insurance available to Smith and not against any of Smith's other assets.

¶ 7        On April 17, 2008, Hunt, as the assignee of Smith, filed a two-count complaint against State Farm Mutual.[2] Count I sought a declaration that State Farm had a duty to defend Smith in the lawsuit Hunt filed against her and is now estopped from raising any policy defenses, because it failed to defend her or file a declaratory judgment action. Count II alleged State Farm breached its contract of insurance with Smith by failing to defend, indemnify, or settle Hunt's claim against Smith. Hunt sought $900,000 plus costs, attorney fees, and postjudgment interest of 9% per annum, as well as statutory penalties under section 155 of the Insurance Code. 215 ILCS 5/155 (West 2008).

¶ 8        The parties filed cross-motions for summary judgment. In its motion, State Farm asserted it had no duty to defend Smith or settle the underlying lawsuit because it cancelled Smith's insurance policy effective April 29, 2005, five months before the accident. State Farm attached to its motion an affidavit from Jane Mattingly, a State Farm payment plan team manager, stating the policy was cancelled for nonpayment of premium, a copy of the cancellation notice, and a copy of proof of mailing of the cancellation notice.

¶ 9        Hunt's motion for summary judgment alleged State Farm did not properly cancel Smith's insurance policy, because it failed to maintain proof of mailing of the cancellation notice on a recognized United States Post Office form or a form acceptable to the United States Post Office as required by section 143.14(a) of the Insurance Code (215 ILCS 5/143.14(a) (West 2008)). Specifically, Hunt contended that State Farm was required to comply with the provisions of the Domestic Mail Manual, which states, "[w]hen requesting a certificate of mailing for three or more pieces presented at one time, a mailer may use Form 3877 *** or a privately printed facsimile." Hunt asserted that the form used by State Farm was not Form 3877 or a facsimile of that form. Hunt further argued that under the doctrine of collateral

_____

[2]The case was filed in the chancery division of the circuit court of Cook County but was transferred to the law division on January 9, 2009.

estoppel, the appellate court's decision in *Great West Casualty Co. v. State Farm Mutual Automobile Insurance Co.*, No. 1-05-1300 (2006) (unpublished order under Supreme Court Rule 23), rejecting essentially the same form used here, estops State Farm from arguing that its form complied with the Insurance Code. Therefore, Hunt asserted, the policy was in full force at the time of the accident.

¶ 10    On October 8, 2010, with leave of court, State Farm refiled its motion for summary judgment, again arguing it had no duty to defend Smith in Hunt's lawsuit because the policy had been cancelled five months earlier. In addition to the Mattingly affidavit, State Farm attached an affidavit from Kenneth J. Metroff, a technical business analyst with State Farm, stating the insurer uses a facsimile Form 3877, which contains the same information as the postal provided form, and a letter from Randy L. Davis, manager of the business entry for the United States Postal Service, stating the form used by State Farm has been approved and is acceptable to the United States Post Office.

¶ 11    On January 31, 2011, the trial court granted summary judgment in favor of State Farm and denied Hunt's motion for summary judgment. First, the court found that the proof of mailing form used by State Farm was "acceptable" to the United States Post Office and, therefore, the cancellation notice sent to Smith on April 15, 2005, was effective. The court stated:

> "Section 143.14(a) does not require insurance companies to maintain proof of mailing on Form 3877 or on a facsimile of Form 3877. Rather, Section 143.14(a) merely states that the insurance company must maintain proof of mailing the cancellation on a U.S. Post Office form or on a form that is 'acceptable' to the U.S. Post Office.

> \* \* \*

> In the case at bar, the form that State Farm used was 'acceptable' to the U.S. Post Office. In the letters attached to Mr. Metroff's affidavit, various U.S. Postal Service officials advised Mr. Metroff that the Form 3877 'facsimile,' although not identical to the U.S. Post Office Form 3877, included all of the required fields and was 'approved for use at all postal facilities where mailings are entered on behalf of State Farm.' Based upon these letters it is clear that the form that State Farm used to maintain its proof of mailing a cancellation notice to Deborah Smith is 'acceptable' to the U.S. Post Office."

¶ 12    The trial court further held that *Great West* does not collaterally estop State Farm from relying on its proof of mailing form because the Rule 23 order in that case was not a final judgment on the merits, where the appellate court remanded to the trial court for further proceedings. The court also found *Great West* distinguishable because State Farm presented no proof of mailing in that case. Therefore, the court concluded Smith's policy was properly cancelled on April 29, 2005, and because the accident did not occur until October 2005, Hunt may not maintain an action against State Farm based on Smith's insurance policy. Because State Farm had no duty to defend Smith, the court held, the insurer is not estopped from raising cancellation of the policy as a defense in this case. Therefore, the court granted State Farm's motion for summary judgment on both counts of the complaint and denied Hunt's motion for summary judgment. Hunt filed a motion to reconsider, which the trial court denied on January 25, 2012.

¶ 13                                    II. Analysis

¶ 14                              A. Standard of Review

¶ 15        Summary judgment is appropriate "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2008). "Where cross-motions for summary judgment are filed in an insurance coverage case, the parties acknowledge that no material questions of fact exist and only the issue of law regarding the construction of an insurance policy is present." *American Family Mutual Insurance Co. v. Fisher Development, Inc.*, 391 Ill. App. 3d 521, 525 (2009) (citing *Liberty Mutual Fire Insurance Co. v. St. Paul Fire & Marine Insurance Co.*, 363 Ill. App. 3d 335, 338-39 (2005)). We review the circuit court's decision to grant or deny the motion *de novo. Virginia Surety Co. v. Northern Insurance Co. of New York*, 224 Ill. 2d 550, 556 (2007).

¶ 16                              B. Estoppel Doctrine

¶ 17        Hunt argues State Farm had a duty to defend Smith and since it refused to do so, it is prevented under the estoppel doctrine from denying coverage. Generally, the estoppel doctrine provides that "an insurer which takes the position that a complaint potentially alleging coverage is not covered under a policy that includes a duty to defend may not simply refuse to defend the insured." *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 150 (1999). Instead, the insurer has two options: it must either defend the suit under a reservation of rights or seek a declaratory judgment that there is no coverage. *Id.* If the insurer fails to take either of those steps and is later found to have wrongfully denied coverage, the insurer is estopped from raising policy defenses to coverage. *Id*. at 150-51. The estoppel doctrine only applies, however, when the insurer has breached its duty to defend. *Id*. If the insurer has no duty to defend because it was not given an opportunity to defend, there was no insurance policy in existence, or there was no coverage or potential for coverage, the estoppel doctrine does not apply. *Id.* at 151. Thus, whether estoppel applies necessarily depends on whether the insurer had and breached a duty to defend. *Id*. at 152.

¶ 18        Hunt asserts that because State Farm knew of the underlying lawsuit against Smith and failed to either defend her or file a declaratory judgment action it is estopped from denying coverage. The trial court rejected this argument, holding that the estoppel doctrine does not apply because State Farm had cancelled Smith's insurance policy five months before the accident. Hunt argues, however, that the trial court "put the cart before the horse" by considering State Farm's cancellation defense. Where there is a dispute as to whether or not a policy has been properly cancelled, Hunt asserts, the insurer must either defend its insured under a reservation of rights or file a declaratory judgment and is estopped from raising any policy defenses if it fails to do so. Hunt contends that *American Standard Insurance Co. of Wisconsin v. Gnojewski*, 319 Ill. App. 3d 970 (2001), supports his argument.

¶ 19        Gnojewski was insured by Gallant Insurance Company but when she defaulted on her premium payments, Gallant notified her that the policy would be cancelled effective June 10,

1995. *Gnojewski*, 319 Ill. App. 3d at 972. The insured car had a lien on it, which was recorded but not disclosed to Gallant. *Id*. at 973. On August 1, 1995, Gnojewski was involved in an accident in which she and another motorist were killed. *Id*. at 972. When Gnojewski's estate was sued by two of the accident victims, Gallant declined to defend based on its cancellation of the policy for nonpayment of the premium. *Id*. The estate of one of the victims filed a third-party claim seeking a declaration that Gallant was required to provide coverage to Gnojewski's estate for the underlying wrongful death lawsuit. *Id*. at 973. Gallant filed a motion for summary judgment based on its contention the policy had been cancelled before the accident. *Id*. The victim's estate argued Gallant had a duty to defend the Gnojewski estate because at the time the estate's defense was tendered to Gallant, there was a question as to whether the policy was properly cancelled where Gallant failed to notify the lienholder of the cancellation. *Id*. The trial court agreed and entered an order denying Gallant's motion for summary judgment and granting the motion for summary judgment of the passenger's estate. *Id*. at 973-74.

¶ 20   The appellate court affirmed, holding that because it was unclear whether Gallant was required to notify the lienholder of the cancellation, where it had no actual knowledge of the lien, there was at least the potential for coverage under the policy, which triggered Gallant's obligation to either defend Gnojewski under a reservation of rights or file a declaratory judgment action. *Id.* at 977. Gallant's failure to pursue either option was a violation of its duty to defend and therefore estopped Gallant from raising policy defenses to coverage. *Id*. at 978.

¶ 21   Hunt contends there was a dispute as to whether State Farm properly cancelled Smith's insurance policy, which created a "potential" for coverage and required State Farm to either defend under a reservation of rights approach or seek a declaratory judgment relieving it of liability. Since State Farm did neither, Hunt asserts, it is estopped from raising cancellation as a defense. *Gnojewski* is distinguishable, however, and does not support Hunt's argument. In *Gnojewski*, intraoffice memorandums among Gallant employees showed a discussion as to whether coverage existed at the time of the accident, which was evidence that a dispute remained as to whether Gallant had properly cancelled the policy. No similar evidence raising the possibility of continued coverage exists here.

¶ 22   Hunt further argues coverage exists under the doctrine of collateral estoppel because the appellate court in *Johnson v. State Farm Fire & Casualty Co*., 2011 IL App (2d) 100586-U, held that an insurer is estopped from raising the policy defense of cancellation where it failed to defend under a reservation of rights or file a declaratory judgment action. An order entered under subpart (b) or (c) of Rule 23 is not precedential and may not be cited by any party "except to support contentions of double jeopardy, *res judicata*, collateral estoppel or law of the case." Ill. S. Ct. R. 23(e) (eff. July 1, 1994). Collateral estoppel will apply where (1) the issue decided in the prior adjudication is identical with the one presented in the suit in question, (2) there was a final judgment on the merits in the prior adjudication, and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication. *Du Page Forklift Service, Inc. v. Material Handling Services, Inc.*, 195 Ill. 2d 71, 77 (2001). Application of the doctrine of collateral estoppel must be narrowly tailored to fit the precise facts and issues that were plainly determined in the earlier judgment.

*Kessinger v. Grefco, Inc.*, 173 Ill. 2d 447, 467 (1996).

¶ 23    In *Johnson*, the plaintiff broke his ankle when a wooden platform on defendant's mobile home gave way. *Johnson*, 2011 IL App (2d) 100586-U, ¶ 2. The plaintiff sued defendant alleging negligence in maintaining the mobile home. *Id*. ¶ 3. Defendant notified his insurer, State Farm, of the claim, but State Farm refused to defend on the grounds that it cancelled the insurance policy for nonpayment of premium before plaintiff's injury. *Id*. Plaintiff obtained a default judgment against defendant for $300,000. *Id*. Defendant later died, and his estate assigned its interest against State Farm to the plaintiff. *Id*. ¶ 4. Plaintiff filed a declaratory judgment action alleging, in part, that State Farm was liable for the $300,000 judgment because it had not maintained proper proof of mailing of the cancellation notice. *Id*. ¶ 5. During a bench trial, there was conflicting testimony as to whether the insured's insurance agent told plaintiff the decedent's insurance policy could be reinstated retroactively if the premiums were paid. *Id*. ¶ 10. The evidence showed that a new application for insurance was completed and a premium paid, however, State Farm declined the application and sent a refund check for the premium payment. *Id*. ¶ 12. There was also testimony suggesting the insured may have paid all of the premiums owed and that his policy should not have been cancelled. *Id*. ¶ 26. The trial court held that State Farm was estopped to deny coverage and entered judgment in plaintiff's favor for $300,000. *Id*. ¶ 29. The court ruled that there were several disputed issues over whether the policy was in effect, including plaintiff's contention that State Farm failed to maintain a proper proof of mailing, the contradictory evidence as to whether the policy was retroactively reinstated, and the testimony regarding the insured's premium payments. *Id*. The trial court held that when there was such a dispute, State Farm had a duty to either defend its insured or file a declaratory judgment action and could not simply raise the cancellation of the policy as a defense. *Id*.

¶ 24    The appellate court affirmed. Although the appellate court ruled that State Farm's notice of cancellation complied with section 143.14(a) of the Insurance Code, the reinstatement issue and the testimony that the insured paid more than the entire annual premium raised some doubts as to whether there was coverage under the policy. *Id*. ¶ 38. Following the reasoning in *Gnojewski*, the court held that because there was a "potential" for coverage, State Farm had to either defend its insured or file a declaratory judgment action. *Id*. ¶ 44. Since it did neither, it was estopped from raising the policy defense of cancellation. *Id*.

¶ 25    Hunt argues that *Johnson* acts as collateral estoppel, precluding State Farm from raising the policy defense of cancellation where there is some dispute over whether the policy was still in effect at the time of the accident. We disagree. First, in *Johnson* there was evidence suggesting the insurance policy may have been in effect at the time of the accident. The trial testimony indicated there was a dispute over whether or not the insurance agent for the insured informed the plaintiff that the policy would be reinstated retroactively if the past due premiums were paid and whether the insured had actually paid the premiums. Here, the only issue is whether State Farm maintained the proper proof of mailing of the notice of cancellation and no other issues that raise a "potential" for coverage.

¶ 26    Further, section 29(4) of the Restatement (Second) of Judgments states that when applying issue preclusion, a court should consider whether the determination relied on is inconsistent with another determination on the same issue. Restatement (Second) of

Judgments § 29(4) (1982). Other divisions of the appellate court disagree with the holdings in *Johnson* and *Gnojewski* as to whether the estoppel doctrine precludes an insurer from raising the defense of cancellation. State Farm relies on one of those cases, *State Farm Insurance Co. v. American Service Insurance Co.*, 332 Ill. App. 3d 31 (2002), issued by the First District, to support its argument that where a policy has been cancelled or is not in existence when a claim arises, the insurer has no duty to defend its insured and is not estopped from raising cancellation of the policy as a defense.

¶ 27 American Service denied coverage to an insured for a personal injury lawsuit that arose out of an automobile accident that occurred when the insured was attempting to teach his 14-year-old son how to drive. *American Service*, 332 Ill. App. 3d at 34-35. Because the insured had failed to include his 14-year-old son as a potential driver on his insurance application, the insurer, citing a provision in the policy, asserted this omission was a material misrepresentation that rendered the policy " 'null and void from its inception.' " *Id*. at 35. Assignees of the insured filed suit against the insurer, arguing that because the insurer wrongfully denied coverage and failed to either defend the insured under a reservation of rights or seek a declaratory judgment, the insurer should be estopped from asserting this policy provision as a basis to deny coverage. *Id*. at 35-36. The circuit court agreed with the assignees, finding that the personal injury lawsuit was covered under the policy, the insurer had breached its duty to defend by failing to defend or file a declaratory judgment action and, therefore, the insurer was estopped from asserting that the insurance policy was void *ab initio* due to a material misrepresentation. *Id*. at 36.

¶ 28 But, the appellate court reversed, finding the circuit court had acted prematurely in "invoking the estoppel doctrine prior to determining whether [the insured's] insurance policy was in existence at the time of the accident." *Id*. at 38. The court stated:

"[The insurer's] argument that the insurance policy was not in existence at the time of the accident is not a 'policy defense' simply because [the insurer] relies on provisions of the insurance policy in order to support its argument. [The insurer's] rescission defense does not involve a question of policy coverage. Rather, the affirmative defense of rescission raises the issue of whether an insurance policy was in existence. [Citations.]" *Id*. at 37-38.

¶ 29 Relying on *Ehlco*, the appellate court found the trial court erred as a matter of law in invoking the estoppel doctrine *before* determining whether the insurance policy was in existence at the time of the accident. *Id*. at 38. Consequently, the court remanded to allow the parties to litigate the issue of rescission in the trial court. *Id*.

¶ 30 As in *American Service*, the trial court here was correct to first determine whether Smith's insurance policy was in existence before applying the estoppel doctrine. The holding in *Gnojewski* would require an insurer that cancels a policy for failing to pay a premium to defend an insured or file a declaratory judgment to preserve its right to later raise cancellation as a defense. This conflicts with the estoppel doctrine, which provides that an insurer does not have a duty to defend where there was no insurance policy in existence. Therefore, under the estoppel doctrine as defined in *Ehlco*, and the appellate court's holding in *American Service*, State Farm had no duty to defend Smith if there was no insurance policy in existence

at the time of the accident. Therefore, the court must next determine whether State Farm properly maintained a notice of cancellation.

¶ 31                               C. Cancellation of Smith's Policy

¶ 32      Hunt contends the trial court erred in finding that State Farm properly cancelled Smith's insurance policy because State Farm's proof of mailing the notice of cancellation failed to comply with section 143.14(a) of the Insurance Code. 215 ILCS 5/143.14(a) (West 2008). Hunt makes several arguments. First, Hunt argues State Farm did not maintain the proof of mailing on a United States Postal Service form or on a form acceptable to the Postal Service. He also contends State Farm improperly relied on "other evidence," namely the affidavits from Metroff and Mattingly of State Farm and the letter from Randy Davis of the United States Postal Service, to show it complied with the statute. Hunt further asserts State Farm is collaterally estopped from arguing it maintained a proper proof of mailing form, where the appellate court has already held the form does not comply with the statute.

¶ 33      Hunt first contends section 143.14(a) requires State Farm to maintain "proof of mailing of [the] notice [of cancellation] on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service." 215 ILCS 5/143.14(a) (West 2008). Plaintiff asserts that federal law mandates that State Farm use Form 3877 or a facsimile of Form 3877 to maintain the proof of mailing, and that State Farm improperly used a form it created.

¶ 34      Section 143.14(a) states as follows:

> "No notice of cancellation of any policy of insurance, to which Section 143.11 applies, shall be effective unless mailed by the company to the named insured and the mortgage or lien holder, at the last mailing address known by the company. The company shall maintain proof of mailing of such notice on a recognized U.S. Post Office form or a form acceptable to the U.S. Post Office or other commercial mail delivery service. A copy of all such notices shall be sent to the insured's broker, if known *** to the company. For purposes of this Section, the mortgage or lien holder, insured's broker, if known, or the agent of record may opt to accept notification electronically." 215 ILCS 5/143.14(a) (West 2008).

¶ 35      *Ragan v. Columbia Mutual Insurance Co.*, 183 Ill. 2d 342 (1998), is instructive on the application of section 143.14(a). In *Ragan*, defendant Columbia Mutual was asked to produce proof of mailing of a cancellation notice as required by section 143.14(a). *Id.* at 347. Columbia produced what it alleged to be the original envelope, containing a cancellation notice. *Id.* The envelope was metered and imprinted with a dated cancellation stamp, was addressed to the plaintiff, and was marked returned as undeliverable. *Id.* Summary judgment was granted for the plaintiff. Columbia Mutual then filed a motion to reconsider and sought to introduce a copy of an unsigned form entitled "certificate of mailing," listing the cancellation letter to plaintiff and the date it was sent. *Id.* The circuit court denied Columbia's motion to reconsider. The appellate court affirmed the summary judgment, stating that Columbia Mutual did not produce the required statutory proof of mailing and therefore, the purported cancellation was invalid and ineffective. *Id.* at 348.

¶ 36    In affirming, the supreme court stated "[i]t is apparent from the wording of the provision in the context of the Insurance Code that the purpose of the statute is to protect the insured from cancellation of his insurance without his knowledge. To accomplish this purpose, the legislature could have required insurance companies to prove receipt by the insured. But, by enacting this section, the legislature clearly sought to strike a balance between the interest of the insured in being informed of a cancellation of his insurance policy and the burden that would be put on an insurance company to prove receipt by the insured." *Id*. at 351. In striking a balance between insured persons and insurers, the legislature gave insurance companies a "very low threshold of proof" relating to the mailing of cancellation notices, requiring only that the insurer show proof of mailing on a recognized United States Post Office form or form acceptable to the United States Post Office or other commercial mail delivery service. *Id*. at 351-52. The court then held that a finding that "the statute implicitly allows an insurance company to use other evidence to show it maintained the proof of mailing when the statute explicitly requires it to maintain such a form would disturb the balance that the legislature sought to achieve in enacting [section 143.14]." *Id.* at 352. Finding that Columbia had many opportunities to introduce the required form but had failed to do so, the court declared that Columbia's attempted cancellation was ineffective and summary judgment in favor of the insured was therefore proper. *Id*. at 352.

¶ 37    Hunt argues that *Ragan* requires an insurer to maintain proof of mailing on a certain form, Form 3877, or a facsimile, meaning an exact copy, of that form. Hunt reaches this conclusion by considering the provisions of the Domestic Mail Manual, which contains the regulations of the United States Postal Service governing its domestic mail services. Specifically, Hunt points to section 503.2.1, paragraph 5.2.3 of the Domestic Mail Manual, which provides:

>    "When requesting a certificate of mailing for three or more pieces presented at one time, a mailer may use Form 3877 (firm sheet) or a privately printed facsimile, subject to payment of the applicable fee for each item listed. Facsimile Forms 3877 must contain the same information as the postal-provided form."

¶ 38    Hunt argues this passage mandates that State Farm use only Form 3877 or a facsimile of Form 3877 to show proof of mailing the notice of cancellation of Smith's insurance.

¶ 39    State Farm asserts its proof of mailing form was sufficient because it contains the same information as Form 3877 and because the United States Postal Service has stated that State Farm's form is acceptable. We agree. First, Hunt does not argue that the form State Farm used does not contain the same information as Form 3877, but instead, argues the form must be Form 3877 or an exact copy of that form. But, the Domestic Mail Manual permits a mailer to use any of three possible forms when requesting a certificate of mailing for three or more pieces presented at one time: the postal provided Form 3877, a privately printed facsimile, or a privately printed Form 3877 that contains the same information as the postal printed form. State Farm appears to have chosen the latter course and used a privately printed Form 3877 that contains the same information as the postal printed form on which to maintain its proof of mailing. As this third option satisfies the requirement in section 143.14(a) that the insurer use a form "acceptable to the U.S. Post Office," we agree with the trial court's finding that State Farm has complied with the Insurance Code.

¶ 40     Further, as the appellate court stated in *Johnson*, "to accept plaintiff's argument truly exalts form over substance." State Farm's form provided the name and address of the recipient of the notice, Smith, the name and address of the sender, State Farm, the postage, date stamp, the signature of the United States Postal employee who processed the mailing, and the signature of the State Farm employee who mailed the notice. This form was deemed acceptable by the U.S. Post Office and therefore, comports with the proof of notice requirements of the Insurance Code, along with satisfying the "very low threshold of proof" described in *Ragan*. *Ragan*, 183 Ill. 2d at 351-52. Accordingly, we find the trial court did not err in finding State Farm complied with section 143.14(a).

¶ 41     Hunt next argues that State Farm is collaterally estopped from arguing it properly cancelled Smith's insurance policy by the appellate court's Rule 23 order in *Great West*. In that case, the appellate court held that State Farm did not satisfy the proof of mailing requirements of section 143.14(a) of the Insurance Code, where it attached to its motion for summary judgment a purported certificate of mailing. Hunt asserts the form State Farm used in *Great West* is the same form State Farm used here and therefore, due to the appellate court's decision rejecting that form, State Farm is collaterally estopped from arguing the form complies with section 143.14(a).

¶ 42     The trial court concluded that collateral estoppel did not apply here because the Rule 23 order in *Great West* was not a final judgment on the merits since the case was remanded to the trial court. This court need not even address that issue, however, because *Great West* is factually distinguishable. In *Great West*, the insurer presented no proof of mailing, only a log sheet showing the insured's address and letters from a United States Post Office employee stating that State Farm's procedures for maintaining proof of mailing are consistent with United States Postal Service policies and procedures, and an affidavit from Ronald Metroff of State Farm stating he received the Post Office letter. The court noted that State Farm had many opportunities to introduce the form and failed to do so. In contrast, here, State Farm presented a proof of mailing that contained all of the information required in Form 3877. Therefore, the analysis of State Farm's form above controls and we reject Hunt's collateral estoppel argument.

¶ 43     Next, Hunt asserts State Farm is liable for the entire $900,000 judgment because it acted in bad faith by failing to settle Hunt's lawsuit against Smith. Because State Farm properly cancelled Smith's policy, it did not act in bad faith in refusing to defend her in the underlying lawsuit. Even if there were a policy in effect, however, there was no evidence of bad faith. It is not bad faith for an insurer to refuse to settle a claim when the question of coverage is fairly debatable and when the grounds for refusal, if determined in the insurer's favor, would wholly excuse the insurer from any indemnity responsibility to the insured. *Stevenson v. State Farm Fire & Casualty Co.*, 257 Ill. App. 3d 179, 185-86 (1993); *Alliance Syndicate, Inc. v. Parsec, Inc.*, 318 Ill. App. 3d 590, 605 (2000). Here, the question of coverage could be described as debatable, since State Farm had a valid defense to coverage that has in the past excused it from coverage. Therefore, State Farm did not act in bad faith in refusing to settle the lawsuit.

¶ 44     Lastly, Hunt argues the Metroff and Mattingly affidavits did not fulfill the requirements of an affidavit as provided by Illinois Supreme Court Rule 191 (eff. Jan. 4, 2013) and should

have been stricken by the trial court. Because State Farm's proof of mailing comported with both the Domestic Mail Manual and the Insurance Code, the affidavits are extraneous to any resolution of this issue and would have no effect on the outcome of Hunt's argument. Therefore, we decline to address this issue.

¶ 45                                  III. Conclusion

¶ 46        State Farm had no duty to defend Smith in the underlying lawsuit filed by Hunt where State Farm properly cancelled Smith's insurance policy five months before the automobile accident. Therefore, we affirm the trial court's order granting summary judgment in favor of State Farm and denying Hunt's motion for summary judgment.

¶ 47        Affirmed.